*June 1820.*

*Maxwell*
*vs.*
*Seney*

---

## COURT OF APPEALS, (E. S.) JUNE TERM, 1820.

### MAXWELL, *et al. vs.* SENEY's Lessee.

APPEAL from a judgment in an action of ejectment, rendered in favour of the plaintiff in *Talbot* county court, for an undivided thirtieth part of a tract of land called *Londonderry.* The following case was stated for the opinion of that court, viz. That *Mark Benton* died intestate, and without issue, on the 4th of November 1808, seized of the lands and tenements mentioned in the declaration; and that said lands and tenements were acquired by the intestate by purchase, and not derived from or through either of his ancestors. That the intestate had three brothers and three sisters, to wit, *John, Vincent, George, Susan, Ruth* and *Mary,* all of whom departed this life long before the intestate. That *John,* the eldest brother, had three children, viz. *Abel, Polly* and *Sarah.* That *Abel* is still living, *Polly* married *Charles Burgess,* and died before *Mark,* the intestate, leaving three children, viz. *Sarah, George* and *Mary;* the two last are still living, and the first died intestate, and without issue. That *Sarah Benton,* the niece of *Mark,* the intestate, married *Henry Rochester,* and died long before the intestate, leaving a daughter named *Elizabeth,* who afterwards married *Samuel Cacy,* and died before *Mark,* the intestate, leaving a son named *Francis,* who is still living. That *Vincent* the second brother of the intestate, had the following sons and daughters, viz. *James, John, Vincent, Elizabeth* and *Mary,*

*Under the act of 1786, ch 45, where one dies intestate and without issue, seized of an estate in land by purchase, and not derived from or through either of his ancestors, such estate descends to his brothers and sisters of the whole blood, and their descendants, in equal degree; and if one of said brothers or sisters die, leaving a grand child, or any the most remote descendant, as his or her heir at law, such child, or descendant, is entitled to the same interest in the estate, as the ancestor would have been if living, and takes the same per stirpes and not per capita.*

of whom *James* departed this life long before the intestate, and left two children viz. *Elijah*, and *Susanna* the wife of *Horatio Rochester*, which said *Elijah* and *Susanna* are both alive; *John* departed this life long before the intestate, and left one son, who died in his infancy, before the intestate; *Vincent* and *Elizabeth* are still living; *Mary* married *James Meeds*, and died long before the intestate, leaving only one daughter named *Rebecca*, who is now the wife of —————— *Blackiston.* That *George*, the third brother of the intestate, died without issue, and before the intestate. That *Susan*, the eldest sister of the intestate, married *Joseph Baxter*, and died long before the intestate, leaving the following children, viz. *Vincent, John, Joseph, Sarah,* and *Susanna*, all of whom are still living. That *Ruth*, the second sister of the intestate, married *John Seney*, and departed this life long before the intestate, leaving the following sons, viz. *Joshua, Samuel, Horatio, Jonathan* and *Robert*, of whom *Joshua* departed this life long before the intestate, leaving three sons, viz. *John, Joshua* and *Robert;* the first of whom died since the intestate, leaving one son named *Joshua*, (the lessor of the plaintiff,) who is an infant under the age of 21 years. *Joshua* and *Robert* last mentioned, are still alive. That *Samuel*, the second son of *Ruth*, departed this life long before *Mark*, the intestate, leaving three children, viz. *Jonathan, Joshua* and *Elizabeth*, of whom *Jonathan* and *Elizabeth* are still living; and *Joshua* was alive at the intestate's death, but has since died leaving two children. That *Horatio, Jonathan* and *Robert*, the other sons of *Ruth*, all died before the intestate, and without issue. That *Mary*, the youngest sister of *Mark*, the intestate, married *Charles Thomas*, and died long before the intestate, leaving one daughter named *Mary*, who married *Charles Vanhkle*, and departed this life after the intestate, leaving three children, viz. *Charles T, Lydia*, and *Elizabeth*, all of whom are still living. That *Joshua Seney*, the infant son of the late *John Seney*, and lessor of the plaintiff, claims a share of the lands and premises mentioned in the declaration. The county court gave judgment on the case stated for the plaintiff; and the defendants appealed to this court.

The case was argued in this court before BUCHANAN, JOHNSON, MARTIN and DORSEY, J.

*Hammond,* for the appellant, relied upon the act of 1786, ch. 45; *Sir T. Raym* 496, and *Cooper's Justinian,* 393 to 400.

*Goldsborough,* for the appellee, also relied upon the act of 1786, *ch.* 45, and *Collier's Lessee vs. Stewart,* decided in this court in 1812.

BUCHANAN, J. delivered the opinion of the court.

*Mark Benton,* under whom the plaintiff in the ejectment claims, died seized of an estate of inheritance in the land mentioned in the declaration, which he acquired by purchase, leaving no child or descendant, or brother or sister, alive at the time of his death, but a number of collateral relations, the children, grand children, and great grand children, of his brothers and sisters, all of the whole blood. *Joshua Seney,* the lessor of the plaintiff, is a great grand son of *Ruth Benton,* one of the sisters, and seeks to recover an undivided part of the land of which *Mark Benton* died seized; and the question, which lies within a very narrow compass, is, whether he is entitled to any and what proportion of that land, and it is not necessary to look beyond the provisions of the act to direct descents, (1786, *ch.* 45,) on which it depends, to arrive at the intention of the legislature. The second section of that act, after directing in what manner an estate descended to an intestate shall go, provides, "that if the estate is or shall be vested in the intestate by purchase, and not derived from or through either of his ancestors, and there be no child or descendant of such intestate, then the estate shall descend to the brothers and sisters of such intestate of the whole blood, and their descendants, in equal degree," &c. And by the fourth section it is enacted, "that if, in the descending or collateral line, any father or mother may be dead, the child or children of such father or mother shall, by representation, be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more; and in such case, where there are more children than one, the share aforesaid shall be equally divided among such children."

It is contended, on the part of the appellant, that in the collateral line, only those in equal degree, and none more remote than the children of brothers and sisters, can take,

and that they must take *"per capita,"* and not *"per stirpes,"* and the argument in support of these positions, as applicable to the first section of the law of descents, was very forcible. But whatever would be the true construction of that branch of the act, if it stood alone, the fourth section, the office of which is to ascertain who shall be considered as standing in the same degree, and the proportions to which they shall be respectively entitled, furnishes an interpretation that cannot be resisted, and is a full answer to any argument that can be drawn from the second section. If none could take but those in the same degree, it would follow, that where there are brothers and sisters, and children of a deceased brother or sister, as the brothers and sisters could alone stand in equal degree, they would take the whole estate, to the exclusion of the nephews and nieces. But this is obviated by the fourth section of the act, which, if it has any meaning, contemplates and provides for such a case, by declaring the children of a deceased father, or mother, to be in the same degree, by representation, as the father or mother would have been if living, and giving to them the same share of the estate that their father or mother, if alive, would have been entitled to, and thus the nephews and nieces, in the case put, are placed, not in fact, (which cannot be,) but by representation, in the same degree of relation to the intestate, with the surviving brothers and sisters, and are not excluded from a participation in the estate, but are entitled to whatever would have been the proportion of their father or mother.

The argument, that among collaterals none beyond the children of brothers and sisters can take, however ingenious and well urged, cannot be sustained. The words, "any father or mother," in the fourth section of the act, cannot be restricted to the brothers and sisters of the intestate; that would be an arbitrary interpretation, not warranted by any thing to be found in the law itself, and contrary to any known rule of construction, but are unlimited, and must apply to any father or mother in the descending or collateral line, in any the remotest degree. Thus, if there be a brother and a nephew, the son of a deceased brother, the nephew, by representation, stands in the same degree with the brother, and will take one half of the estate, being the share to which his father would have been entitled, if alive; and if the nephew be dead, leaving a child, that child is

considered by representation, in the same degree as his fa-
ther would have been, if living, and so on *ad infinitum;*
and as the same section directs, that where there are more
children than one, the share of their deceased father or
mother, and no more, shall be equally divided among such
children, it follows that they must take *"per stirpes"* and
not *"per capita,"* and that was settled in the case of *Col-
lier* and *Stewart;* for no matter on what ground *John Stew-
art,* the defendant, claimed, *Helena Collier* could on no other
principle have been entitled to one eighth part of the estate
of the intestate, the proportion that was adjudged to her
in that case; and the same principle governs this case. The
collateral relations of *Mark Benton* were the descendants
of two brothers and three sisters, making five *stirpes;* there
were six grand children of *Ruth Seney,* one of the five
*stirpes;* and *Joshua Seney,* the lessor of the plaintiff, is
the only child of *Joshua Seney,* who is dead, and was one
of the six grand children of *Ruth;* he therefore is entitled
to a sixth part of a fifth of the land mentioned in the de-
claration, being one thirtieth of the whole.

JUDGMENT AFFIRMED.