Alvey, J.,
delivered the opinion of the court.
Dr. Corbin Amos, the intestate, died in July, x866, seized of an estate of inheritance in certain real estate, lying in the *138 City of Baltimore, which he acquired by purchase, and left surviving him no child or descendant, nor any brother or *sister but left surviving a large number of collateral relations, the children and grand-children of his deceased brothers and sisters, of the whole blood.
A bill was filed, on the part of some of these relations, in the Circuit Court of Baltimore City,' for the sale of the real estate of the intestate, for division among the heirs ; and a portion of the property having been sold under a decree, and the sale reported and ratified, the proceedings were referred to the Auditor of the court, to state an account of the proceeds of sale, and to ascertain the proportions thereof to which the several parties were entitled. The Auditor reported these audits : The first of which seems to be stated according to his own view of'the proper manner of apportioning the fund, and by whicli he distributes the net proceeds of sale, per stirpes, among such children of the deceased brothers and sisters of the intestate as were living at his death, excluding the grand-nephews apd nieces whose parents had died before the intestate. The second audit, marked A., stated under instruction of counsel, apportions the net proceeds of sale, per capita, amongst the children of the deceased brothers and sisters, living at the death of the intestate, excluding the grand-nephews and nieces. And by the third audit, marked B., also stated under instruction of counsel, the grand-nephews and nieces, whose parents had died in the lifetime of the intestate, are allowed to share in the distribution of the net proceeds of sale.
To these several audits exceptions were filed, and, upon hearing, the court below sustained the exceptions to the Auditor’s own account, and to account B, and overruled those to account A., and finally ratified the latter account, and ordered the fund to be paid out to the nephews and nieces of the intestate, according to the per capita distribution therein'made.
It 'is from this order that some of the nephews and nieces have taken this appeal. And it is now for this court to decide which of these several audits should have been ratified *and confirmed ; or, in other words, to whom, and upon what principle, should the proceeds of the sale of the real estate of the intestate be distributed.
On the part of the appellees, it is contended: 1st. That the *139 grand-nephews and grand-nieces of the intestate, whose parents died in his lifetime, are altogether excluded from any share or participation in the estate: and, 2nd. That as among the nephews and nieces of the intestate, all being in equal degree of relationship to him, they take equally, per capita, and not per stirpes.
The rights of these parties depend upon the proper construction of the Code of Pub. Gen. Laws, Art. 47, secs. 19 and 27, those two sections being literally codified from the Act of 1820, ch. 191, entitled “ An Act to amend and reduce into one system the laws to direct descents.”
Sec. 19 of Art. 47, declares that, “ If the estate shall be vested in the intestate by purchase, or shall descend to or vest in the intestate in any other manner than as hereinbefore mentioned, and there be no child or descendant of such intestate, then the estate shall descend to the brothers and sisters of such intestate, of the whole blood, and their descendants, in equal degree, equally." Sec. 27 of the same Article, provides that “ If, in.the descending, or collateral line, any father or mother may be dead, the child or children of such father or mother shall, by representation, be considered in the same degree as the father or mother would have been, if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more ; and in such case, when there are more children than one, the share aforesaid shall be equally divided amongst such children; provided, that there be no representation admitted among collaterals after brothers’ and sisters' children.”
r. As to the right of the grand-nephews and grand-nieces to share in the proceeds of the sale of the intestate’s real estate, *that depends upon the true construction of this restrictive proviso, attached to sec. 27 of the statute just quoted. And as this proviso was taken from the English Statute of Distribution, of the 22 and 23, Charles II., ch. 10, or rather from the 118th Novel of Justinian, from which the Statute of Charles was mainly copied, its judicial interpretation has, by repeated decisions in the courts of England, become too well settled to admit of a question, at this day, as to its meaning. By all the decisions, our own, as well as those made in the English courts, brothers and sisters referred to in the proviso, *140 have been construed to mean brothers and sisters of the intestate; and that representation is not admitted when the' distribution happens to fall among brothers and sisters who are reniotely related to the intestate. Porter v. Askew, 11 G. & J. 346. And although lineal descendants, ad inñnitum, may share in the inheritance of an intestate’s real estate, yet, upon the received construction of this proviso, as among collateral descendants, except only the instance of the intestate’s bi'others’ and sisters’ children, proximity of blood alone gives title to it. And in this case, there being those in existence, at the death of the intestate, of greater degree of proximity of blood to him, it follows, therefore, that the grand-xiephews and grandnieces, who made claim in the court below, have no right to share in the inheritance.
2. Whether the nephews and nieces of the intestate take per capita or per stirpes, is the main question involved, and the one most argued at bar.
It was ingeniously and forcibly contended, by .the counsel for the appellees, that the rule to be deduced, by a correct interpretation of the statute to direct descents is, that when heirs are all in equal degree of relationship to the intestate, as in this case, they inherit and take per capita, or equal portions ; and that it is only when they stand in different degrees of relationship to the intestate, that they inherit and take per stirpes, or such portion only as their immediate axicestor would have inherited if living.' And such being *the pidnciple applied by the court below, in the distribution of the proceeds of the sale of the real estate of the intestate among his nephews and nieces, it is insisted that there is no error in the order appealed from, and that it ought to be affirmed. And, ixi support of this construction of the statute, we have been much pressed with the analogies drawn from the cases on the English Statute of Distribution, and the rules observed in the courts of many of the American States upon this subject.
That such general rule, as here contended for, prevails in the law of descents, as adopted and administered in many of the States of the Union, is doubtless true ; but it is so by statutory provision only; and if there were no other provision in our statute upon this subject than that found in sec. 19, before referx-ed to, wherein it is declared that the estate “ shall *141 descend to the brothers and sisters of such intestate, of the whole blood, and their descendants in equal degree equally,” it might well be contended that such rule obtained in our system of descents. But we must view the statute as a whole, and sec. 19 must be taken as qualified and explained by sec. 27. And when, by the latter section, it is declared that the child or children “ shall, by representation, be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more ” we have an unqualified rule prescribed that we are not at liberty to disregard. Its terms are explicit, and to admit the rule contended for, by which the per capita decision is maintained, would not only do violence to the language employed, but would be adopting a principle that the Legislature has shown a manifest design to exclude. The terms of sec. 19, upon which so much stress is laid, must be taken fivapply only to the collateral relations of the intestate of a remoter degree than brothers’ and sisters’ children ; and, by thus reading the two sections together, we think there can be no doubt but that, with the restrictive proviso *in sec. 27, the rule of representation is made applicable as well to cases where all the parties entitled stand in equal degree of relationship to the intestate, as where they stand in unequal degrees. That the words, “ any father or mother,” employed in this latter section, cannot be restricted to mean any father or mother dead, leaving brother or sister surviving. The word “ any ” means every ; and embraces as well the case where all of a class have died in the lifetime of the intestate, as where some one or more only may have died. And, if this be so, it necessarily follows that the rule given t:s by sec. 27 is general, and that no exception to it can or ought to be admitted.
If, therefore, a brother and a nephew, the son of a deceased brother, be the parties claiming the inheritance, the nephew, by representation, stands in the same degree, by force of the terms of the statute, with the brother, and will take one-half of the estate, being the share to which his father would have been entitled if living. And so, if all the brothers and sisters be dead, and the claimants are nephews and nieces, the children of several brothers and sisters, the claimants must take, by *142 representation, the same share of the estate as their respective fathers and mothers Would have been entitled to, and no more; and if there be more children than one of any particular deceased brother or sister of the intestate, the share to which that brother or sister would have been entitled, if alive, must ■ be equally divided amongst such children. This is the plain reading of the statute, and ño argument is required to elucidate its terms.
• If authority, however, be needed to support the conclusion which we have drawn from the explicit language of the statute, we have it in the case of Maxwell v. Seney, 5 H. & J. 23.
That was a case arising under the Act of descents of 1786,'■ ch. 45, and depended for its determination upon the construction of sec. 4 of that Act, which was identical in its terms with sec. 27 now under consideration, with *the exception of the proviso limiting representation among collaterals after brothers’ and sisters’ childi'en, which was afterwards, for the first time, adopted ixi the Act of 1820. In that case, as in this, all the brothers and sisters of the intestate had died before him, leaving children and grand-children, and some of them great-grand-children. The lessor of the plaintiff was a great-grandson of one of the sisters of the intestate, and was the only child of his deceased father, who was one of six graxid-children of the deceased sister of the intestate. And,’ upon that state of case, the lessor of the plaintiff was adjudged to be entitled to recover in ejectment his proper proportion of the intestate’s real estate, being a sixth of a fifth part thereof.
There, in the absence of the restrictive px'oviso, afterwards adopted as part of sec. 4, of the Act of 1820, the principle of, representation was applied without limitation. And it was said, in the opinion of the court, that “ if a xiephew be dead, leaving a child, that child is considered by representation, in the same degree as. his father would have been if living, and so on ad infinitum; and as the same section directs, that where there are more children than one, the share of their deceased father or mother, and no more, shall be equally divided among such children, it follows that they must take per stirpes, and not per capita, and that was settled in the case of Collier v. Stewart.”
But in regard to Maxwell v. Seney, supra, it was insisted in *143 argument, that as the descendants of the brothers and sisters of Mark Benton, the intestate, stood in unequal degrees of proximity of blood to him, the decision there made does not apply to the present case, because here those who can take the estate all stand in equal degree of relationship to the intestate; and that, that fact makes the difference in the application of the rule of division.
The opinion off the court, however, proceeded upon no spell reasoning or distinction. On the contrary, to ascertain the proportion to which the party claiming in that case, was '^entitled to recover, the brothers and sisters of the intestate, though they had all died before him, were regarded as the stirpes; and the several branches of the descendants of the brothers and sisters could only take the same proportion that their root, whom they represented, would have done if alive. Whereas, if the theory of the appellees be correct, the nephews and nieces should have been regarded as the stirpes, and the primary division made according to their number ; the words “ any father or mother,” used in sec. 4, Act of 1786, not being restricted to mean brothers and sisters of the intestate. The principle of representation was asserted and applied in that case, as a general one, without qualification or restriction ; and it was predicated of the controlling language of sec. 4 of the Act, “ the office of which,” said the court, in speaking of its effect upon the preceding 2nd section, (which declared that the estate should descend to the brothers and sisters of the intestate, and their descendants, in equal degree equally,) “ is to ascertain who shall be considered as standing in the same degree, and the proportions to which they shall be respectively entitled.” And, in this case, while all the parties having a right to take, stand in equal degree of relationship to the intestate, by force of sec. 27 of the statute, they take through the brothers and sisters of the intestate, who are the stirpes, and the estate must be divided, amongst those entitled, with reference to the number of such stirpes.
It follows that the order of the court below, sustaining the exceptions to the auditor’s own account,.and overruling the exceptions to account A, and finally ratifying the latter account,, must be reversed. And the cause will be remanded, that the: *144 fund arising from the sale of the real estate of the intestate may be distributed by the court below, in accordance with this opinion. The costs of this appeal to be paid out of such fund.

Order reversed and cause remanded.