CATHERINE O. HOFFMAN ET AL. *vs.* MABEL G. WATSON ET AL.

*Descent and Distribution—Grandnieces of Deceased Intestate Entitled to the Exclusion of Cousins—Representation Among Collaterals.*

When a man dies intestate, seized of real estate which he acquired by purchase, and leaving as his only relations grandnieces and first cousins, the land descends to the grandnieces to the exclusion of the cousins, under Code, Art. 46, sec. 19.

In such case, the grandnieces are likewise entitled to the personal property of the intestate to the exclusion of his cousins, under Code, Art. 93, sec. 127.

Code, Art. 46, sec. 19, in providing for the descent of land of which the owner dies intestate, directs that if the estate was vested in him by purchase, and there be no child or descendant of the intestate, then the estate shall descend to his brothers and sisters of the whole blood, and their descendants in equal degree, equally. Section 21 provides that if there be no brother or sister or descendant thereof, and no father or mother of the intestate, then the land shall descend to the grandfather on the part of the father, and, if he be not living, to his descendants in equal degree. Section 27, directs that in the descending or collateral line, the children of a deceased father or mother shall by representation be considered in the same degree as their parent would have been, "provided that there be no representation admitted among collaterals after brothers' and sisters' children." A man died intestate, without issue, seized of land acquired by purchase, leaving as his only relations two grandnieces, the descendants of his deceased sister, and certain cousins, being children of an uncle of the intestate. *Held*, that under the plain language of section 19, the grandnieces of the intestate, being descendants of a sister, are entitled to the land; that the cousins can only inherit under section 21, which is subordinate to section 19, in the event of there being no descendants of a brother or sister of the decedent; that the proviso in section 27, limiting the right of representation to the children of brothers and sisters, only applies when there are brothers and sisters or nephews and nieces, and does not apply when there are none of these, but only grandnephews or grandnieces; that in such event, these latter take by virtue of being descendants, according to the direction in section 19, by inheritance and not by representation; that the effect of the proviso in section 27 is to prevent grandnieces from sharing with nephews and nieces, these latter taking by representation the shares of their parents.

Code, Art. 93, sec. 126, in providing for the distribution of the personal property of an intestate who shall die without leaving a child or parent, directs that a brother or sister or child or descendant of a brother or sister, shall have the whole.

And section 127 provides that every brother and sister of the intestate shall be entitled to an equal share, and the child or children of a brother or sister of the intestate shall stand in the place of such brother or sister. *Held,* that if there be no brother or sister or child of either, but there is a descendant of a brother or sister, such descendant takes the personal property in preference to any other collateral relations.

*Decided January 21st, 1909.*

Appeal from the Circuit Court of Baltimore City (EL-LIOTT, J.).

The cause was argued at the January Term, 1908, and was re-argued at the October Term, 1908, before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON, THOMAS and HENRY, JJ.

*Thomas G. Hayes* and *Howard E. Cruse,* for appellants.

The single question, presented by this appeal, is whether the appellants, the first cousins of James S. Clark, the intestate, who died without any lineal descendant, wife, child or descendant, father or mother, brother or sister, surviving him, take his entire property, both real and personal, to the exclusion of the appellees who are the grandnieces, the children of a deceased nephew of the said James S. Clark. The contention of the appellants, the first cousins, is that they, because of their *"closer proximity of blood"* to the said intestate, James S. Clark, take the whole of his property, to the exclusion of the grandnieces. The grandnieces since the Act of 1820, ch. 191, section 4, now contained in section 27 of article 46 of the present Code, as to real estate, take, if at all, because of their closer degree of kinship to James S. Clark, the intestate, and not by representation, and as the degree of kinship or proximity of blood of the grandnieces to said intestate is more remote than that of the first cousins, the latter, under the Maryland law of descents take the whole of the intestate's real estate to the exclusion of the former.

Certain sections of article 93 of the present Code, as construed by this Court apply the same principle of law to the distribution of the personal property of said intestate, and gives the whole of the personal property to the first cousins when the only claimant is a grandniece. The learned lower Court by its decree gave the grandnieces the whole property, both real and personal of the intestate, to the exclusion of the first cousins, these appellants; and to reverse this decree this appeal is brought.

I. *Mode of Reckoning. Degrees of Kinship:* The law of Maryland declares that the mode of reckoning degrees of kinship of collateral relatives shall be that of the common law in distinction from the mode of the civil law. Article 93, section 134, of the present Code, describes and prescribes this common law mode of reckoning the degrees of kinship of collaterals. This Court has said of this section as follows: "It is evidence to prove relationship within the fifth degree; if it be reckoned by counting down from the common ancestors to the remote, according to the rule presented by the Act of 1798, chapter 101, sub-chapter 11, section 15 (now Code, Article 93, section 134), and that must be adopted whatever was the rule anterior to the passage of that Act." *State* v. *Greenwell,* 4 G. & J. 415. Under this common law rule of reckoning kinship of collaterals to a given person deceased, there must first be found a common ancestor from whom both of the individuals or classes have descended and then the reckoning is always downwards, and the kinship of the individuals, or the individuals of the two classes to this common ancestor, is their degree of kinship to the deceased person in question.

Blackstone discusses at some length this whole question of the mode and manner of reckoning by the common law the degree of kinship of collaterals. He gives a Table of Descents, showing the degrees of kinship, both on the paternal and maternal side, and thus expresses this rule: "We begin at the common ancestor and reckon downwards, and in whatsoever degree the two persons or the most remote of them is distant from the common ancestor, that is the degree in which

they are related to each other. Thus Titius and his brother are related in the first degree, for from the father to each of them is counted only one; Titius and his nephew are related in the second degree, for the nephew is two degrees removed from the common ancestor, viz, his own grandfather, the father of Titius." 2 *Black. Com.* 206. Applying this rule to the first cousins and the grandnieces, we have the common ancestor from whom the reckoning downwards must be made, the grandfather of the intestate James S. Clark. The degree of kinship of the first cousins, the appellants, to this common ancestor is as follows:

1. From this common ancestor, the grandfather of James S. Clark, intestate, to their father, the brother of the father of the said James S. Clark, one degree.

2. From the father of the appellants to themselves, one degree.

So that the degree of kinship of these first cousins to the common ancestor and hence to James S. Clark, the intestate, is a kinship in the second degree.

Now consider the degree of kinship of the grandnieces, the appellees, to the common ancestor:

1. From the common ancestor, the grandfather of James S. Clark, intestate, to the father of James S. Clark, one degree.

2. From the father of James S. Clark to himself, one degree.

3. From James S. Clark to his nephew, Henry Clark Watson, the father of the grandnieces, the appellees, one degree.

4. From the father of the grandnieces to the grandnieces, one degree.

So that the degree of kinship of the grandnieces to the common ancestor, and hence to James S. Clark, the intestate, is the fourth degree, and therefore, the first cousins are two degrees closer related to the intestate, James S. Clark, than the grandnieces. The fact that the first cousins are of *"closer proximity of blood"* to James S. Clark than the grandnieces must be conceded on the above showing.

II. *Descent of Real Estate:* The Maryland law regulating
the descent of real estate is Article 46 of the Code. The sec-
tions of that Article, relating to the descent of the property
involved in this appeal, are sections 19, 21 and 27. The
original Act, now embodied in Art. 46 of the Code, was the
Act of 1786, chapter 45. By this Act all the descendants of
the deceased brothers and sisters of the intestate, took by *rep-
resentation.* And hence under the terms of this original Act
of 1786, chapter 45, if it had not been changed by a subse-
quentAct, it is conceded that the grandnieces, being descend-
ants of a deceased sister, would take the whole of the property
in question by representation to the exclusion of the first
cousins. This was settled by this Court in the case of *Max-
well* v. *Seney,* 5 H. & J. 26. But by the Act of 1820, chapter
191, now section 27 of Article 46 of the present Code, a most
material change was made in the law of descent of real estate,
that is this Act of 1786, ch. 45. By the Act of 1820, ch. 191,
a proviso was inserted into the law of descents of real estate
which limited the taking by *representation* to the children of
deceased brothers and sisters of the intestate. This put all
other collaterals, including grandnieces, except children of de-
ceased brothers and sisters of the intestate, on a par—that is
to say, none took by representation, but solely by reason of
the proximity of blood or nearness of kinship. This proviso
which thus destroyed the taking by representation, with the
exception mentioned, occurs in section 27 of Article 46, and
is as follows: *"Provided that there be no representation ad-
mitted among collaterals after brothers' and sisters' children."*
The legal effect of this proviso is to take the appellees, the
grandnieces, out of the class of those who take by representa-
tion, and place their right to take solely on the ground of
proximity of blood or nearness of kinship. It thus must fol-
low that as the first cousins, the appellants, as heretofore
shown in this brief, are two degrees nearer related to James
S. Clark, the intestate, than the grandnieces, they must take
his entire real estate, to the exclusion of the grandnieces. This
conclusion is abundantly established by the following Mary-

land cases: *Porter* v. *Askew*, 11 G. & J. 350; *McComas* v. *Amos*, 29 Md. 138; *Elwood* v. *Lannon*, 27 Md. 210; *Garrison* v. *Hill*, 81 Md. 211; *Graham* v. *Whitridge*, 99 Md. 289. Outside of Maryland the same law prevails, and the authorities are given in 14 *Cyc.* 45. This Maryland law, as above given, conclusively shows that these appellants as first cousins to James S. Clark, the intestate, take the whole real estate, to the exclusion of the grandnieces, the appellees, and hence the decree appealed from which gave the whole real estate to the grandnieces is in this respect erroneous.

III. *Distribution of Personal Property:* The right of the appellants, as first cousins, to take the whole of the personal property of James S. Clark, the intestate, under the Maryland law of distribution, if it were possible, is more apparent and conclusively fixed by this law and the decisions of this Court construing the same, than their right to take the whole of the real estate, as heretofore considered and discussed in this brief. The Maryland law as to the distribution of personal property among collateral relatives is given in Article 93 of the present Code. The sections relating to the questions involved are 127 and 129, being sections 129 and 131 of the Code of 1860. Section 127 clearly limits the taking of personal property as to collaterals, by representation, to children of deceased brothers and sisters of the intestate. The language of this section 127 is as follows: "Every brother and sister of the intestate shall be entitled to an equal share, *and the child or children of a brother or sister of the intestate shall stand in the place of such brother or sister.*"

In Section 129 the word "descendants" is used in such an uncertain or ambiguous way as to make this section susceptible of meaning that all the "descendants" of a deceased brother or sister of the intestate take by representation, which would include grandnieces. But this Court in construing these two sections has held that these sections must be construed *in pari materia.* And that as section 127 has so expressly limited the taking by representation to the children of deceased brothers and sisters of the intestate, that in order to harmon-

ize the two sections, the taking by representation expressed in
section 129 must be limited as expressed in section 127, to
children of the deceased brothers and sisters of the intestate.
Which construction necessarily excludes grandnieces from
taking by representation and places their right to take solely
on their degree of kinship to the intestate, and hence they
would be excluded in this case. This Court has so construed
these sections 127 and 129 in the following cases: *McComas*
v. *Amos,* 29 Md. 128; *Robins* v. *State,* 1 H. & G. 476, note;
*Durall* v. *Harwood,* 1 H. & G. 474; *Garrison* v. *Hill,* 81 Md.
211; *Graham* v. *Whitridge,* 99 Md. 289; *Elwood* v. *Lannon,*
27 Md. 210. In 14 *Cyc.* 45, cases from other States are
given, which decide the same thing as to the status of grand-
nieces. The above Maryland cases clearly show the decree
of the lower Court was erroneous in distributing the personal
property to the grandnieces and excluding the first cousins.

*W. Baltzell Jenkins* and *J. Cookman Boyd,* for the appel-
lees.

Both the grandnieces and cousins are claiming by reason
of being "descendants" of kindred specifically named in the
19th and 21st sections, respectively; that is to say, the *grand-
nieces* being *descendants* of a sister of the *intestate,* and the
cousins *being descendants* of the *grandfather* of the *intestate.*

In *Maxwell* v. *Seney,* 5 H. & J. 27, we find this Court de-
termining at the very outset that under the Act of 1786,
chap. 45, grandnieces and great-grandnieces were descend-
ants and did take. Now, what has taken place, or what change
has there been in the law since, which declares that grand-
nieces are no longer descendants of a brother or sister of an
intestate, and which thereby prevents them from taking or
sharing in the estate at bar?

In Maryland the law of inheritance-descent up to 1786
was governed by the common law, and the common law was
regulated by the "canons" of "descent." The common law
was then abrogated by the Act of 1786, chap. 45, and from
that time up to 1820 the law or doctrine of "representation"

applied to both lineal and collateral "descendants" alike *in the descending line*. *Maxwell* v. *Seney*, 5 H. & J. 27; *Stewart* v. *Collier*, 3 H. & J. 289. The Act of 1786, chap. 45, was repealed and re-enacted with amendments by the Act of 1820, chap. 191, and is the law of this State today and known as Article 46 of the Code. As to the amendments of that Article affecting the rights to take of collateral relations more remote than brothers' and sisters' children of the intestate, we find upon examination that section 2 is identical with section 19, Article 46, of the Code of 1888, and section 4 is identical with section 27 of the Code of 1888, with the exception of a proviso attached.

This proviso does not, nor was it so intended, mean that the grandchildren of a deceased brother or sister, in the contemplation of the law of inheritance, are not *descendants*. After the Act of 1820, referred to, containing the proviso of limiting representation, etc., now attached to section 27, Article 46 of the Code, this Court was called upon to decide whether an aunt or cousins would share in the distribution of an estate. L——— died seized of an estate by purchase, intestate and without issue. She left A———, an aunt, and children of uncles and aunts. *Held*, that under the Act of 1820, chap. 191, sec. 4 (now Art. 46, sec. 27), which declares that there shall be no "*representation among collaterals, after brothers' and sisters' children*," the *aunt* was entitled to the whole estate to the *exclusion* of the cousins. *Porter* v. *Askew*, 11 Gill & Johnson, 346.

In *McComas* v. *Amos*, 29 Md. 139, the proviso was applied to grandnephews and grandnieces, etc., and they with cousins in the *Porter Case*, fell by the wayside, by reason of the presence of nephews and an aunt, respectively.

The Court said in passing upon this restrictive proviso attached to section 27 of the Statute: "And as this proviso was taken from the English Statute of Distribution, of the 22 and 23, Charles II, ch. 10, or rather from the 118th Novel of Justinian, from which the Statute of Charles was mainly copied," etc. And further said: "By all the deci-

sions in the Courts of England, our own, as well, brothers
and sisters referred to in the proviso have been construed to
mean brothers and sisters of the intestate, and that *repre-
sentation* is not admitted when the distribution *happens to
fall among brothers and sisters*. The Court then cites the case
of *Porter* v. *Askew,* 11 Gill & Johnson, 346.

Degrees referred to by this Court in their decisions con-
struing the Laws of Descent and Distribution, do not mean
degrees counted either by the common, civil or canon law.
1st. Because the Court has said: "The matter of distribu-
tion of an intestate's personal estate is regulated by positive
law, and *any* person within the rules prescribed acquires a
right of which he cannot be divested, etc." *Rock Hill Col-
lege* v. *Jones,* 47 Md. 20.   2nd. Because the relations who
take are clearly defined and placed in sections and are classi-
fied by Articles 46 and 93, and made so explicit and plain
that any layman may understand.

The word *degree* in this connection is *synonymous* with
*class*.   Each of the sections 19 to 23, inclusive, puts the rela-
tions in specific classes, and the relations in that particular
class must be exhausted before leaving or going to another
more remote class or degree.   That is to say, the relations in
the 19th section must be exhausted before going to the 20th
section.

The United States Circuit Court of Appeals in *Kerr and
Parker, Executors, etc.,* v. *Goldsborough,* 150 Fed. Rep. 289,
said:   "The Act of Congress classified the legatees and dis-
tributees with reference to their degree of blood relationship
to the deceased, and regulated the taxes to be imposed upon
legacies and distributive shares accordingly.   In the *first-
class* were placed those persons who are found to be the lineal
issue or lineal ancestor, brother or sister of the decedent; in
the *second-class* are the descendants of a brother or sister of
the person dying possessed of property; the *third-class* in-
cludes those who may be the brother or sister of the father or
mother, or a descendant of a brother or sister of the father
or mother; the brother or sister of the grandfather or grand-

mother; or a descendant of a brother or sister of the grandfather or grandmother constitutes the *fourth-class*, etc."

It appears from the above decision, that Act of Congress, of June 13, 1898, as amended March 2, 1901, is identical with the laws of Maryland as to classification of legatees and distributees, etc., and use the word class, synonymous with degree.

The appellees submit that they take the personalty under section 127, Article 93 of Code, which reads as follows: "If there be a brother or sister, or child or descendant of a brother or sister, and no child, descendant or father of the intestate, the said brother, sister or child or descendant of a brother or sister shall have the whole."

First. Because the grandnieces are the only persons in existence who could answer any of the requirements of the description contained in the section just quoted, they being the only "*descendants* of a brother or sister" of the intestate.

Second. Because the use of the word child, followed by the use of the word *descendant,* necessarily means that section 127 is to apply not only to a child but also to a *descendant* more remote than a child of a brother or sister.

Third. Because in this same section, the same use of the word child followed by the word *descendant* is made as to a child or *descendant* of the *inestate.* This section 127 provides that if there be no child or *descendant* of the intestate the word *descendant* meaning *descendants* more remote than children of the *intestate,* then the distribution shall be taken by the child or *descendant* of a brother or sister. The word *descendant* is used in the same sense in section 127, whether applied to *descendants* of the *intestate* or to *descendants* of a *brother* or *sister* of the *intestate.*

Fourth. Because in section 128, article 93, which reads as follows: "Every brother and sister of the *intestate* shall be entitled to an equal share, and the *child* or *children* of a brother or sister of the *intestate* shall stand in the place of such brother or sister."

Here we find the word *descendants* is conspicuously ab-

sent and purposely omitted, it being the intention to refer
to children only, and not to *descendants* more remote than
children. This section 128 disposes of the important ques-
tion certain to arise whether if there be one child of a de-
ceased brother or sister, and two or more children of another
deceased brother or sister, the said children will take by
*representation* and not *per capita.*

Impliedly, by this section *descendants* more remote than
children of brothers and sisters would take *per capita.* And
this construction as to more remote *descendants* was given to
section 128 in the case of *McComas* v. *Amos,* 29 Md. 120;
that is to say, this section 128 does not limit the distribution
so that it shall not go beyond a child or children of a de-
ceased brother or sister, but only provides that there will be a
taking by *representation* instead of *per capita* by the children
of deceased brothers and sisters. This decision limiting the
word *descendants* to mean children of brothers and sisters is
not a decision excluding *descendants* of brothers and sisters
more remote than children of brothers and sisters, but de-
cides that the effect of this section 130 depends upon its asso-
ciation with section 128. Under this decision section 130 is
supplemental to section 128 in that while section 128 says
that the child or children of a brother or sister shall stand in
the place of a brother or sister; that is to say, by *representa-
tion* or *per stirpes, section* 130 provides that after children of
brothers and sisters there shall be no *representation,* and,
therefore, that more remote *descendants* than children of
brothers and sisters will take *per capita.*

The decision is that living children of brothers and sisters
under the two sections 128 and 130 take the whole estate not-
withstanding the existence of more remote *descendants,* and
this decision was reached after the two sections, 128 and
130, had been so construed as to harmonize, and the section
130 to supplement section 128.

The decision construed the meaning of the word *descendant*
relative to sections 128 and 130; it did not include *section
127* in its construction of the law—because the Court was not

then called upon to decide the effect of the wording of section
127, but it did imply by the language or the decision that the
grandnephews and grandnieces would take in the absence of
nephews and nieces, and that decision seemingly treated the
wording of section 127 as having the meaning, plain and
obvious, ordinarily attached to the words used in said section.

BOYD, C. J., delivered the opinion of the Court.

Inasmuch as the members of the Court who sat at the orig-
inal hearing of this case differed as to the construction of
the statutes involved, a re-argument was ordered before a full
Bench which has been heard.

James S. Clark died intestate, unmarried and without any
relatives nearer than the appellants, who were his first cous-
ins, and the appellees, who were his grandnieces. He left
real estate which he had acquired *by purchase,* and personal
property. The question to be determined is whether the
cousins or the grandnieces are entitled to the intestate's prop-
erty, and, as he left both realty and personalty, it will be
necessary to consider the two classes of property separately.

1. We will first consider the realty. Section 1 of Article
46 of the Code provides that: "If any person seized of an
estate in lands    *    *    *    shall die intestate thereof, such
lands, tenements or hereditaments *shall descend* in fee simple
to the kindred, male and female, of such person, *in the fol-
lowing order,* to wit:" After first providing for the descent to
children and their descendants, the statute states the order of
succession when there is no child or descendant, in case the
estate descended to the decedent on the part of the father, and
also when it descended on the part of the mother, and then
section 19 provides as follows: "If the estate shall be vested
in the intestate *by purchase*    *    *    and there be no child
or descendant of such intestate, then the estate shall descend
to the brothers and sisters of such intestate of the whole
blood, and their descendants in equal degree, equally." Sec-
tion 20 provides for its descent to the brothers and sisters of
the half blood, and their descendants in equal degree, if there

be none of the whole blood; and section 21 is as follows: "If no brother or sister of the whole or half blood, or any descendant from said brother or sister, then to the father, and if no father living, then to the mother, and if no mother living, then to the grandfather on the part of the father, and if no such grandfather living, then to the descendants of such grandfather in equal degree, equally."

It requires no argument to show, and it is not, and cannot be denied that if the appellants take at all, it must be under section 21, and likewise the appellees must take, if at all, under section 19. If the statute stopped at section 21 there could be no possible doubt that the appellees would take to the exclusion of the appellants, for they are *descendants* of a sister of the intestate—being granddaughters of his sister, Mary F., who married John Watson, and as the appellants can only claim under section 21, they are by the very language of the statute under which they claim only entitled "if no brother or sister of the whole or half blood, or *any descendant* from such brother or sister" be living. Even then they must show that there is no father, mother or grandfather on the part of the father living before they can have any standing, and then only as "the descendants of such grandfather." It is, so to speak, a condition precedent to the right of cousins to take by descent under the statute, to prove that there was no brother, sister, descendant from such brother or sister, father, mother or grandfather on the part of the father of the intestate living, and hence as the appellees are descendants from a sister of the intestate and are embraced in section 19, the descent must stop there, and cannot get to the appellants under section 21, unless there be some other part of the statute which requires an interpretation that excludes the appellees from the term "descendants," as used in section 19 and in what we have called the "condition precedent" in section 21.

As a general rule the word "descendants" is not limited to "children." In *Levering* v. *Orrick,* 97 Md. 145, JUDGE PEARCE quoted from 2 *Williams on Executors,* 976, where

under the term "descendants" it is said: "Under this description is comprised every individual proceeding from the stock or family referred to by the testator;" and from 2 *Jarman on Wills,* 632: "Descendants are issue of every degree." But in *Maxwell* v. *Seney's Lessee,* 5 H. & J. 23, our predecessors, through JUDGE BUCHANAN, held that under the second section of the Act of 1786, ch. 45 (now sec. 19 of Art. 46), as interpreted by the fourth section (which is now sec. 27, without the proviso): "if one of said brothers or sisters die, leaving a grandchild, or any the most remote descendant, as his or her heir at law, such child or descendant is entitled to the same interest in the estate as the ancestor would have been if living; and takes the same *per stirpes* and not *per capita*" (quoting from the syllabus). In that case grandnephews and grandnieces were distinctly held to be "descendants," and a great-grandnephew was permitted by representation, under the statute as it then stood, to share in his father's interest

But in 1820 our statute of descents was amended, and it is claimed by the appellants that the part of that Act which is now the proviso at the end of section 27 of Article 46, so changed the law of this State as to give first cousins priority over grandnieces. That section is as follows: "If in the descendingor collateral line, any father or mother shall be dead, the child or children of such father or mother shall by representation be considered in the same degree as the said father or mother would have been, if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled, and no more; and in such case, when there are more children than one, the share aforesaid shall be equally divided among such children; *provided, that there be no representation admitted among collaterals after brothers' and sisters' children." The proviso* in italics was added by the Act of 1820 to what was the fourth section of the Act of 1786. In *Maxwell* v. *Seney, supra,* it was said, in speaking of the fourth section, "the office of which is to ascertain who shall be considered as *standing in the same*

*degree,* and *the proportions to which they shall be respectively entitled.*" That was in answer to the contention that in the collateral line "only those in equal degree, and none more remote than the children of. brothers and sisters can take, and that they must take *per capita,* and not *per stirpes,*" which contention the Court refused to sustain.

The fallacy in the argument of the appellants consists in confusing the term "representation" with that of "descent," or "inheritance." If the appellees sought "by representation to be considered in the same degree" as their father, who was a son of the sister of the intestate, so as to participate in the inheritance with other nephews and nieces, an altogether different question would have arisen, but they claim as descendants of a sister of the intestate—there being no sister or brother of the intestate living and no descendants of any such brother or sister who are more nearly related to such brother or sister than they are. It can scarcely be contended that if the appellants were not living, the appellees would not have inherited this property, and they would have inherited it under section 19. That being conceded, as it certainly must be, upon what possible ground can it be said that the appellants, who must take, if at all, under section 21, can exclude the appellees, when the latter section expressly makes their right to inherit subordinate to the rights of those embraced in section 19 ? That of itself ought to be a complete answer to the appellants' claim.

It is perfectly certain that if the appellees would not have taken under the conditions just stated, the appellants can have no standing in Court. In *Porter* v. *Askew,* 11 G. & J. 346, it was held that this proviso, in what is now section 27, limited *representation* among collaterals to the children of brothers and sisters of the intestate, and that was repeated in *McComas* v. *Amos,* 29 Md. 132. In *Porter* v. *Askew,* it was applied to a case where there were an aunt and first cousins of the intestate. The Court held that the first cousins, who were children of two uncles and another aunt of the intestate who had pre-deceased him, could not take by *repre-*

*sentation* and hence Mary Askew, an aunt who survived the intestate, took the whole estate. Now if the proviso in section 27 applies to first cousins as well as to grandnieces, as has been distinctly decided, would it not prevent the appellants from inheriting this estate, if it would the appellees? Undoubtedly it would, and therefore it would seem clear that if the appellees cannot inherit under section 19 by reason of the proviso in section 27, the appellants could not inherit under section 21 by reason of the same proviso, even if the appellees were not in existence, and *a fortiori* cannot so inherit as they are living. We do not mean to intimate that the proviso has such effect, but if it had as to the appellees, it would also have as to the appellants. There is no escape from that conclusion.

We repeat that the appellants can only inherit, if at all, by virtue of section 21. It is not a question as to whether first cousins or grandnieces would take at common law, but the question is which of those two classes take under our Statute. In 27 *Am. & Eng. Ency. of Law,* 316, that proposition, which ought not to require authority to sustain it, is thus stated: "The State statutes generally prescribe the order in which the near relatives of the decedent shall take his property, by a designation of relationship instead of by computation of the degrees of kinship. Most of the statutes fix the order of succession by children and their descendants, the widow and the husband, the father and mother, and the brothers and sisters, *nominatim.* Consequently, it is only where the decedent's property goes to kindred outside this series of especially designated relatives, that the method adopted for reckoning degrees of kinship is resorted to in determining the order of succession." As no one can inherit under section 21 until the classes under sections 19 and 20 are exhausted, and there are those living who can inherit under section 19, we do not understand how it can be said that those embraced in section 21 can displace them. Such a conclusion would not only be contrary to the ordinary rules of construction, but would be in the very teeth of the statute.

The appellees do not ask that they "by representation be considered in the same degree" as their father would have been, if living, to use the language of section 27, but they ask, as *descendants* of the only brother or sister of the intestate who left descendants, that they be given what section 19 says shall, under such conditions as exist, be their property. They are such "descendants," and, as they are living, they take before those claiming under section 21 which in terms only allows them to take *"if* no brother or sister of the whole or half blood, or any descendants from such brother or sister," etc., be living.

Taking "by representation" is an altogether different thing from taking by inheritance. The former only applies when a party seeks to be considered in the same degree as a deceased father or mother would have been in, if living. Section 27 does not prohibit grandnephews and grandnieces from inheriting. The construction contended for by the appellants would in effect limit the use of the word "descendants" to that of "children"—so that no one beyond children of a brother or sister of an intestate could inherit. If the Legislature had intended the proviso in section 27 to have such effect, it could have much more easily have said so by using the word "children" in section 19. The Act of 1820 did not attempt to amend section 19, but section 27, and only amended that by limiting the right of *representation* to brothers' and sisters' children. That limitation necessarily implied that it was only in cases where there were brothers and sisters or nephews and nieces because, unless that be so, the proviso was absolutely useless. The only occasion for grandnephews by representation being considered in the same degree as their father or mother would be to enable them to take part in the distribution with those of the same degree as their father or mother. That the Act of 1820 prohibited, but if the grandnieces are the nearest descendants from a brother or sister of the intestate they are not dependent upon representation, but upon the descent which the law has cast upon them as the nearest descendants.

The appellants contend that *McComas* v. *Amos,* 29 Md. 132, has determined the question in their favor, but we cannot agree with them in that contention. That was a controversy between nephews and nieces on the one hand and grandnephews and grandnieces on the other. Under section 27 the latter, in such case, are undoubtedly excluded. The reason for it is perfectly clear, namely, because nephews and nieces are more closely related than grandnephews and grandnieces, and both are included in section 19, and those in that section most closely related to the intestate take to the exclusion of the others, excepting in so far as section 27 enables them to take by representation, but there is nothing in any part of the statute which can be construed to mean that any included in section 19 are to be subordinated to those in section 21.

JUDGE ALVEY said on this branch of the case: "As to the right of the grandnephews and grandnieces to *share in* the proceeds of the sale of the intestate's real estate, that depends upon the true construction of this restrictive proviso, attached to the twenty-seventh section of the statute just quoted. * * *. By all the decisions, our own, as well as those made in the English Courts, brothers and sisters referred to in the proviso have been construed to mean brothers and sisters of the intestate, and that *representation* is not admitted when the distribution happens to fall among brothers and sisters who are remotely related to the intestate. *Porter* v. *Askew,* 11 Gill & J. 346. And although lineal descendants *ad infinitum* may share in the inheritance of an intestate's real estate, yet upon the received construction of this proviso, as among collateral descendants, except only the instance of the intestate's brothers' and sisters' children, proximity of blood alone gives title to it. And in this case, *there being those in existence* at the death of the intestate of greater degree of proximity of blood to him, *it follows, therefore,* that the grandnephews and grandnieces who made claim in the Court below have no right to share in the inheritance."

We do not at all question that statement of the learned

Judge, but cannot, as the appellants do, apply the language
used by him to a state of facts wholly different from those
he was considering and passing upon. In that case, as we
have seen, the Court was determining the respective rights
of nephews and nieces, who were on one step and grand-
nephews and grandnieces who were on a lower step of the
ladder of descent, but all of whom were in the classes of heirs
included in section 19, if they could inherit at all from the
intestate. That section provides that "the estate shall de-
scend to the brothers and sisters of such intestate of the whole
blood, and their *descendants in equal degree,* equally."
Grandnephews and grandnieces were not "descendants in
equal degree" with nephews and nieces, and therefore the
estate did not descend to them, unless they could by repre-
sentation stand in the place of their deceased parents, who
where nephews and nieces, and consequently in equal degree
with the other nephews and nieces. But as section 27 pro-
vided "that there be *no representation* admitted among col-
laterals after brothers' and sisters' children," and they were
not children, but grandchildren of the brothers and sisters,
of course there could be no representation by them. Nephews
and nieces are higher up the ladder than grandnephews and
grandnieces, and therefore "proximity of blood alone" gave
them title to the real estate, to the exclusion of those descend-
ants of brothers and sisters who were a degree below them
in "proximity of blood." That is all that JUDGE ALVEY
could have meant, and in our judgment it is all that he said,
when taken in connection with the facts he had before him.
In stating his conclusion above quoted he said: "And in
this case, *there being those in existence* at the death of the
intestate of greater degree of proximity of blood to him, *it
follows,* therefore, that the grandnephews and grandnieces
have no right to share in the inheritance." Is not the nec-
essary implication to be drawn from that statement, that they
would have had the right to share but for the nephews and
nieces who were in existence? JUDGE ALVEY, in the passage
quoted above, was distinguishing between lineal descendants

who may, *ad infinitum, by representation* take, and collateral descendants, who are not admitted *by representation* beyond brothers' and sisters' children, and of course those beyond that must depend upon "proximity of blood alone," just as he said. The only reason he gave why those grandnephews and grandnieces could not inherit was because there were in existence those of greater degree of proximity of blood, all of whom were included in section 19. Unquestionably, if there had not been nephews and nieces in existence, the grandnephews and grandnieces would have inherited from Dr. Amos, and would have done so under section 19, and cousins, who come under section 21, could have had no standing until all included in sections 19 and 20 were shown to be extinct.

It is not a question whether cousins are more nearly related than grandnephews and grandnieces—that might depend upon how you determine the degrees—but the question is what order *our statute of descents* fixes, and, without violating that statute, you cannot give those embraced in section 21 the right to inherit before those included in section 19. As we have seen, section 1 of Article 46 says the lands, etc., "shall descend in fee simple to the kindred, male and female, of such person, in *the following order,* to wit." Even a father or mother cannot inherit under section 21 until all entitled under section 19 are extinct; and it must be conceded that nephews and nieces are entitled under the latter, even if it be denied that grandnephews and grandnieces are. The appellants have to go up to the intestate's grandfather, and then down to grandchildren of their grandfather, and they can only do that by virtue of section 21.

We are then of the opinion that the appellees, as grandnieces of the intestate are entitled to the real estate to the exclusion of the appellants, who can only take under section 21, which by its terms is subordinate to section 19, and that all that *McComas* v. *Amos,* decided was that grandnephews and grandnieces could not *share with* nephews and nieces, because under section 27 the latter take by representation the shares of their parents, while the former do not. That

was all that was before the Court affecting this subject, and
we are sure JUDGE ALVEY had no intention of determining
in that case the rights of classes who take under the statute
which were not before him. But the language used by him
was unquestionably applied to the facts before the Court in
that case, and we have no doubt about the correctness of his
conclusion.

In *Garrison* v. *Hill*, 81 Md. 211, and *Graham* v. *Whit-
ridge,* 99 Md. 289, cited by the appellants, the controversy
in each case was also between nephews and nieces on the one
hand and grandnephews and grandnieces on the other. There
is no case that we have been able to find which casts the
slightest doubt on the right of grandnephews and grandnieces
to take where there was no sister, brother, nephew or niece,
living at the death of the intestate under such a statute as
ours.

2. In the distribution of personalty, after the statute has
provided for lineal descent, and that, if there be a father and
no child or descendant, the father shall have the whole, sec-
tion 126 of article 93 provides that, "if there be a brother
or sister, or child *or descendant* of a brother or sister, and no
child, descendant or father of the intestate, the said brother,
sister or child *or descendant* of a brother or sister, shall have
the whole." It seems to us that there ought to be no doubt
about the meaning of that section, when taken in connection
with section 127, which is: "Every brother and sister of the
intestate shall be entitled to an equal share, and the child or
children of a brother or sister of the intestate shall stand in
the place of such brother or sister." If an intestate had a
brother and a sister, and both were living at the time of his
death, each would take one-half of the personalty, exclusive,
of course, of the widow's share. If the brother was living
and the sister was dead, but left one child surviving her,
then, under section 127, the brother and the child of the
sister would each take one-half. Or, if the brother had died
without leaving a child and the sister left a child, then such
child would take the whole. But if neither of them left

children, but one left a grandson, then the grandson, who
would be a grandnephew of the intestate, would take the
whole.    Section 126 says:  "The child *or descendant* of a
brother or sister shall have the whole."   That does not limit
the distribution to a "child," but to a *"child or descendant,"*
and must mean that if there be no brother, sister, or child of
a brother or sister, but there is a descendant of a brother or
sister, such descendant would take before any other collateral
relations, excepting in so far as section 128 provides for the
mother taking a share under certain conditions   The case
of *McComas* v. *Amos,* 29 Md. 120, is supposed to be con-
trary to that conclusion, but we. do not find it so.    There
JUDGE ALVEY had under consideration what are now sections
127 and 129 of Article 93.   He said that the word "descend-
ants," as used in section 129 (section 131, Art. 93, Code
1860, which he was referring to), was construed to mean
children of such brothers and sisters, but he did not construe
the words "or child or descendant of a brother or sister" in
section 126 to mean child alone, in determining who was to
take.   He was in that case, as in the later case on page 132,
considering the rights of nephews and nieces on the one side,
and grandnephews and grandnieces on the other, and not, as
in this case, whether grandnieces are to be excluded from
distribution by cousins.   There is no case in this State in
which the precise question now before us was passed on or
considered, and, after a careful investigation of the deci-
sions in other States, we have found none that sustain the
contention of the appellants.   There are cases which hold,
as *McComas* v. *Amos* did, that under a statute such as ours,
nephews and nieces take to the exclusion of grandnephews
and grandnieces, but in none of them have we found any
intimation that, where there are no brothers or sisters or
nephews or nieces, grandnephews and grandnieces do not
take.

If there had been no cousins, it would scarcely have been
contended that the appllees would not have been entitled to
the estate, as we have already said in reference to the realty.

Section 129 of Art. 93 is: "*After* children, descendants, father, mother, brothers and sisters of the deceased, *and their descendants,* all collateral relations in equal degree shall take, and no representation among such collaterals shall be allowed; and there shall be no distinction between the whole and half blood." This section and section 126 would seem to make the case as to the personalty even stronger than that of the realty, as section 126 expressly says, "child *or descendant* of a brother or sister" and section 129 in terms postpones such collaterals as the appellants, to take after "brothers and sisters of the deceased and their descendants." In *Shriver* v. *State,* 65 Md. 285, JUDGE MILLER, in speaking of a brother (James) of the intestate, said: "The *onus* is upon the plaintiff to show that James died before the intestate, leaving no children *or descendants,* and if he fails to show this he can recover only one-fourth."

As the appellees are entitled to distribution under section 126 of Article 93, we are unable to understand upon what principle those who claim under other sections, which only confer rights after those in section 126 are extinct, can displace the latter. The statute seems to us to clearly give the right of distribution to the grandnieces in preference to the cousins.

3. We do not deem it necessary to further prolong this opinion by discussing the degrees of relationship at common law, as we have already sufficiently expressed our views on that subject, but we do not want to be understood as agreeing with the appellants as to the relationship of these parties. The appellants claim as descendants of the grandfather of the intestate, while the appellees claim as descendants of a sister of the intestate. If, therefore, we did undertake to determine the degrees of relationship we could not properly do so by taking the grandfather as the common ancestor. But we prefer to base our decision on the interpretation of the statutes, and are of the opinion that although grandnephews and grandnieces cannot take when there are nephews and nieces, because of the proximity of blood of the latter as com-

pared with the former, when there are no nephews or nieces the grandnephews and grandnieces do take as descendants of a brother or sister of the intestate to the exclusion of cousins, because the latter cannot take until those in prior sections (19 of Article 46 and 126 of Art. 93), which include grandnephews and grandnieces, are shown to be extinct.

We are, for the reasons given, of the opinion that the decree of the lower Court must be affirmed, both as to the realty and personalty.

> *Decree affirmed, the appellants to pay the costs, above and below.*

Briscoe and Schmucker, JJ., dissented.

Worthington, J., concurred and filed the following opinion:

It seems to me too plain for argument that where lands are acquired by purchase the only way in which the first cousins of the intestate can, in this State, inherit from the intestate, is under section 21 of article 46 of the Code of 1904, which reads as follws:

Sec. 21. "If no brother or sister of the whole or half blood, *or any descendant* from such brother or sister, then .to the father, and if no father living then to the mother, and if no mother living, then to the grandfather on the part of the father, and if no such grandfather living, *then to the descendants of such grandfather in equal degree, equally."*

Now first cousins are descendants of a common grandparent and it is only by reason of their being such *descendants that they* are entitled to share in the inheritance, under the Statute to Direct Descents.

Section 19 provides for brothers and sisters of the intestate, of the whole blood and their descendants.

Section 20 provides for brothers and sisters of the intestate, of the half blood and their descendants.

Section 21 provides for *other collateral descendants after the collateral lines under the two preceding sections are exhausted.*

The word "descendants" means descendants to "the remotest degree." *Maxwell* v. *Seney,* 5 H. & J. 25. This is the plain reading of the statute and argument as to its proper construction would seem to be wholly unnecessary.

It is contended, however, that this Court has construed the law differently, and the case of *McComas* v. *Amos,* 29 Md. 140, where it is said that "there being those in existence of a greater degree of proximity of blood, the grandnephews and grandnieces　*　*　* have no right to share in the inheritance," is cited to support this contention.

But in that case the Court was dealing with a *proviso* in regard to *representation,* and not with the general rules of inheritance.

This is made perfectly clear by the reference in this opinion written by JUDGE ALVEY, to the case of *Maxwell* v. *Seney,* 5 H. & J. 23, where it was said that: "If a nephew be dead leaving a child, that child is considered by *representation,* in the same degree as his father would have been, if living, and so on, *ad infinitum.*" In the same case the Court said that the rule of representation before the Act of 1820, ch. 191, applied to the descending or collateral line, *"in any the remotest degree."* The Act of 1820 contained a *proviso* as to *representation,* but did not change the law of *inheritance.*

The words "proximity of blood alone gives title," as used by JUDGE ALVEY, applied to the case then in hand where the contest was between nephews and nieces and grandnephews and grandnieces. As between these proximity of blood alone gives title, because there is, since the Act of 1820, no representation among collaterals beyond brothers' and sisters' children, and the grandnephews and grandnieces were excluded by the existence of nephews and nieces.

As to personal property Art. 93, section 126 of the Code of 1904, in my judgment controls. That section is as follows:

Section 126. "If there be a brother or sister, or child or descendant of a brother or sister, and no child, descendant

or father of the intestate, the said brother, sister, or child or *descendant* of a brother or sister shall have the whole."

Here again by sections 127 and 129 no representation amongst collaterals is allowed, beyond brothers' and sisters' children.

No effort on my part to elucidate these provisions of the Code could improve on the admirable opinion delivered by BOYD, C. J., in this case, and without attempting to review the former decisions of this Court in regard to the subject, none of which decisions could change the plain language of the statute, and none of which attempt to do so, I think the decree of the lower Court, in this case, is entirely right and is properly affirmed.

(Filed January 22nd, 1909.)