BEALE GAITHER
vs.
SUSAN GAITHER AND
ELLEN GAITHER ET AL.

}          DECEMBER TERM, 1851.

[TRUST—FRAUD—EVIDENCE.]

IF an heir or personal representative or devisee, whose interest would be prejudiced by the insertion of a provision in a will in favor of some third person, induces the testator to omit such provision by assurances, either by words or silent assent, that his wishes shall be executed as though the provision were made, such assurance will raise a trust which will be enforced in equity on the ground of fraud.

If such trust be denied by the heir or devisee, it may be proved by parol, though the statute of frauds be relied upon as a defence.

But the Court will not interfere if there be any doubt or ambiguity in the evidence, and there is no case in which the party setting up such a provision has been successful, where a reasonable doubt in regard to the fact could be entertained.

In this case the will was executed in 1834, the testator died in 1836, and the person by whom the imputed assurance was alleged to be made died in 1849, and the bill was not filed until 1850. No reason for the delay was assigned, and the plaintiff entirely failed in producing clear and satisfactory evidence of the assurances set up in the bill. The Chancellor dismissed the bill.

Declarations of a grantor made since the execution of a deed, are inadmissible to impair the rights of parties claiming under it.

Declarations of a deceased attesting witness to a will, respecting the incapa-

city of the testator at the time of its execution, are admissible in evidence against the will, where the validity of the will is the question to be tried.

But the declaration of a deceased attesting witness as to the contents and operation of the will are inadmissible; the will must speak for itself: nor are they admissible to show that a fraud was practised upon the testator in obtaining the will.

Parol evidence is inadmissible to show that the draftsman of the will was mistaken, and the testator designed something not fully expressed.

[William Plummer executed his will on the 6th of September, 1834, by which he devised two tracts of land to Beale Gaither, "to him, his heirs and assigns for ever." The testator died in January, 1836. Beale Gaither, on the 4th of October, 1840, executed a deed by which, in consideration of natural love and affection, he conveyed various tracts of land, including that devised to him by said will, to his three daughters, Susan, Ellen, and Mary Ann, and died intestate, in the year 1849. On the 6th of June, 1850, the complainant, the son of said Beale Gaither, filed the present bill, in which it is alleged and charged, that said Plummer was about to execute his will, whereby he was about, and told said Beale Gaither that he designed to devise to complainant and his brother William, the said land in fee, but that on said Plummer's so stating his purpose and design, said Beale Gaither, who was the reputed son of said Plummer, told him that complainant and said William were then young, and unable to take care of themselves and of their property, and that it would be better to devise the said property to him, the said Beale, and the said Beale promised and agreed with the said Plummer, that if he would devise said property to him, he would, when complainant and said William became old enough to take care of it, give it to them, or that he would give it to them at his death. And that, upon the representation of the said Beale, and his said undertaking to hold the said property in trust for the benefit of complainant and said William, the said Plummer, relying upon the same, actually devised the said property to the said Beale, and to his heirs and assigns for ever. That it was the purpose and design of said Plummer

to devise said land to complainant and said William, and that he so told said Beale, and was prevented from making said devise by the persuasion and inducement of said Beale, who faithfully promised said Plummer that he would hold said property in trust for complainant and said William, and that but for such promise and undertaking of said Beale, the said devise would have been made by said Plummer to complainant and said William, and was in fact made to said Beale in trust for them.   The bill contains various other averments relative to the possession of the property and the declarations of said Beale Gaither that he held it in trust for complainant and his brother William, &c., which it is not necessary to state.   The prayer of the bill is that the deed of 1840 may be annulled and vacated, and the defendants required to convey said property to the complainant in fee.

Besides the complainant, the said Beale Gaither left surviving him his son, the said William, three daughters abovementioned, and two sons, Thomas and James, his heirs-at-law, all of whom were made defendants to the bill, and severally answered, denying the averments thereof fully and particularly.   The evidence taken in the case sufficiently appears from the opinion of the Chancellor.]

The Chancellor:

The proposition of law upon which the complainant's case rests, and upon which he has placed it by his bill, appears to be well fortified by authority. ˙ That proposition is, that if an heir or personal representative or devisee whose interests would be prejudiced by the insertion of a provision in a will in favor of some third person, induces the testator to omit such provision by assurances that his wishes shall be executed, as though the provision were made, such assurance will raise a trust which, though not available at law, will be enforced in equity on the ground of fraud.   *Barrow* vs. *Greenough*, 3 *Ves.*, 152; *Mestaer* vs. *Gillespie*, 11 *Ves.*, 621; *Strickland* vs. *Aldridge*, 9 *Ves.*, 516; 1 *Story's Eq.*, sec. 256; 2 *ib.*, sec. 781.   Cases establishing the principle could be multiplied to

almost any extent, but there is no necessity for collecting any more of them, as no opposing authorities have been cited, and the principle is not disputed.

And it may also be assumed to be equally well founded, that if the trust is devised by the heir or devisee, it may be proved by parol, though the statute of frauds is relied upon as a defence. 1 *Jarman on Wills*, 357; *Oldham* vs. *Litchfield*, 2 *Vernon*, 506; *Chamberlain* vs. *Agar*, 2 *Ves. & Beams.*, 262; *Colegate D. Owing's Case*, 1 *Bland*, 402. The title of the party in whose favor a provision has been omitted by reason of such assurances, to the aid of the Court, does not rest upon the mere ground of trust, because viewed in that light the statute of frauds would be an insuperable bar. His right to relief is founded upon the fraud, for as was said by Lord Eldon in *Strickland* vs. *Aldridge*, "the statute was never permitted to be a cover for fraud upon the private rights of individuals."

But though parol evidence may be admitted to prove the agreement of the heir or devisee in opposition to the answer, and the Court will decree relief if the proof be sufficiently strong, the cases show its undisguised reluctance to interfere if there be any doubt or ambiguity in the evidence. The Master of the Rolls in the case of *Barrow* vs. *Greenough*, 3 *Ves.*, 152, spoke emphatically of the danger of decreeing in such cases upon parol evidence only, and congratulated himself that he had in that case the required proof in the defendant's handwriting, remarking, that if he was compelled to decide the cause exclusively upon the parol proof, he could not grant relief. And upon examining the many cases which have been decided upon this head of equity, it will be found that in none has the party setting up such a provision been successful when a reasonable doubt in regard to the fact could be entertained.

In this case, in my opinion, the plaintiff has entirely failed in producing that clear and satisfactory evidence which is required, of which requisition there are circumstances peculiar to it forbidding the least relaxation. The will was executed in the year 1834, and the testator died in 1836, and Beale

Gaither, the elder, and the person by whom, if by any one, the imputed fraud was perpetrated, died in the year 1849. No reason is stated or appears why the bill was not filed between the years 1836 and 1849, when the elder Gaither was alive, and competent to defend his rights and his reputation. Instead of instituting his suit during that period, the complainant post-poned it until the year 1850, being fourteen years after the death of the testator, and then relies upon loose and perhaps inaccurately-remembered declarations of Gaither, for the pur-pose of defeating the title of the parties claiming under him, under his deed of October, 1840. His declarations, made since that deed, are of course inadmissible to impair the rights of the parties claiming under it. This principle has been frequently adjudicated, and is not in this case understood to be denied, and excludes the testimony of several of the witnesses upon whom the plaintiff relies.

The answers, all of them, deny the statements of the bill, and some of the respondents speak in opposition to their interests, and, on that account, in so far as they speak of matters within their own knowledge, are entitled to more con-sideration than is usually attached to answers. Many of the averments of the bill refer to family transactions, which it is natural to suppose would have formed subjects of conversation in the family circle, and yet the defendants, all of them, deny or express their total ignorance or unbelief of them.

Upon attentively reading and considering the testimony adduced by the plaintiff, and putting out of view altogether the proof on the other side, I can see no ground upon which I could decree the relief prayed by this bill in opposition to these answers. The principle, it will be remembered, is, that the heir or devisee must have induced the testator or intestate to omit the particular provision by assurances that his wishes should be as fully executed as if the omitted provision was made, and even though it be conceded that such an engage-ment may be entered into not only by words but by silent assent, as in a case somewhat analogous was held by *Lord Loughborough*, in 4 *Ves.*, 10, and as was considered by *Lord*

*Eldon*, sufficient to raise a trust in *Paine* vs. *Hall*, 18 *Ves.*, 475, still this bill cannot be maintained, because, as I read the evidence, there is no proof of an assurance by Beale Gaither, either by express or silent assent, that if the testator would not make the provision set up by the bill, he would nevertheless execute his intentions as though he had made it. There is some proof, to be sure, that Gaither, the elder, advised the testator in regard to his will, but there is none which establish the indispensable fact, that he assured him he would fulfil what the bill charges to have been his intention with regard to the plaintiff and his brother William Gaither, if he would execute such a will as he did execute. The proof on the part of the plaintiff, moreover, is far from being in harmony with itself, with reference to the time when the title of the plaintiff in the property should commence. It is said by one of the witnesses that Beale Gaither, the elder, was to hold the property until his sons should be old enough to take charge of and manage it themselves, whilst one of them (the elder Benson) says Gaither, the father, was to have a life estate, and upon his death it was to go to his sons.

The declarations, then, of Beale Gaither, as deposed to by the several witnesses, even including those that appear to have been made since his deed of 1840 (which are, however, clearly inadmissible), are in my judgment wholly insufficient to establish the plaintiff's title to relief. They are not only vague and indeterminate, but they do not show, what must be shown before the complainant can have a decree, that the provision in the will which he alleges the testator was about to make in his favor, was prevented by the assurance of the elder Gaither, either expressly made or tacitly affirmed, that he would execute his intention in that respect, whether inserted in the will or not.

But in addition to the proof of the declarations of Beale Gaither, the elder, the complainant relies upon the evidence of Joseph Cole, who speaks of declarations made by Daniel Lamborne, the draftsman, and one of the subscribing witnesses to the will, he being now dead. This proof is excepted to by

the defendant, and, in my opinion, this exception is well taken. That the declarations of a deceased attesting witness to a will, respecting the incapacity of the testator at the time of its execution, are admissible in evidence when the validity of the instrument is the question to be tried, is not now an open question in this state. That such declarations may be given in evidence against the will, is settled by the case of *Townshend* vs. *Townshend,* 9 *Gill,* 506. But the principle upon which that case was decided, and the reasoning of the courts in the various cases relied upon by the Court of Appeals, in the brief opinion delivered by them, does not reach the present case. The point decided was, that you may give in evidence the declarations of a deceased subscribing witness to a will, that the party executing it was not at the time *compos mentis,* and the reason upon which this departure from the general rule is vindicated, is, that upon the death of the subscribing witness, proof of his handwriting establishes the fact of the sanity of the testator, and everything else essential to the validity of the instrument. The witnesses to a will being dead, upon proof of their handwriting, it will be admitted to probate, the principle being that the law places them around the testator, to try and judge of his capacity to perform the act about which he is engaged. This is the reasoning of the Court in *Harden* vs. *Hays,* 9 *Barr.,* 151, in which the authorities upon the subject in this country and in England appear to have been carefully and critically examined. And it would seem to be quite proper that when so much respect is paid to the mere attestation of the witness, that proof of it when he is dead involves the proof of every fact necessary to the validity of the will, his declaration of an opposite character should also be received. Why should the proof of the handwriting of the witness be equivalent to his oath,—to his oath that the testator was of sound and disposing mind—and his declarations to the contrary be rejected, because those declarations are not under oath ? If the declarations are to be rejected because not sworn to, why should the attestation be received when no oath accompanies the act of attesting ? And if the declarations are to be ex-

cluded because the party against whom they are offered is precluded from the opportunity of a cross-examination, the same objection should apply to proof of the signature of the attesting witness.

But the declarations of the subscribing witness in this case, are of a totally different character. The witness, Cole, says, " That after the testator's death, he had a conversation with Lamborne, (the subscribing witness), who drew the will. Lamborne appeared to be surprised that Gaither had conveyed the land to his daughter. He said that the land was left in trust, in said Gaither's hands, for the use of his boys." " He thinks this conversation with Lamborne took place after Gaither's death." This witness can only be understood to speak of the contents and operation of the will. He does not say that Gaither assured the testator if he would devise the land to him, he would hold it in trust for his sons; and that after this assurance, the testator executed the will in the form in which he drew it; but that the land was left in trust in Gaither's hands, for the use of his boys. He is not speaking of any deception practiced by Gaither upon the testator, but of the operation of the will, which of course must speak for itself, parol evidence being inadmissible to show that the draftsman of the will was mistaken, and that the testator designed something not fully expressed. *Negro Cæsar* vs. *Chew*, 7 *G. & J.*, 127.

If, however, these declarations of Lamborne, made to the witness, Cole, could be understood as the complainant's counsel understood them, that is, as tending to show a fraud practiced by Gaither in obtaining the will, upon what principle can they be received as evidence ? They are declarations without oath, made by a subscribing witness, to be sure, but with reference to a fact having nothing whatever to do with his relation to the will, as an attesting witness. It could scarcely be contended, it is presumed, that if Lamborne had not been a subscribing witness, that his declarations upon this subject, made thirteen years after the death of the testator, or, indeed, if made at any time, could be admitted in evidence, and no good

reason is perceived why the circumstance of his being a sub-scribing witness, should make a difference. The declarations, as proved by Cole, are still merely hearsay, not offered as in the case cited from 9 *Barr*, 151, to disprove that which the proof of the handwriting of the deceased attesting witness established, to wit, that the testator was sane, but to prove another fact with which the proof of the handwriting of the witness had no connection one way or the other. The proof of the declarations, therefore, is not offered to contradict, or impeach, or lessen, the weight due to the attestation, but to set up a distinct and independent fact, with which the attesta-tion has nothing to do. I cannot think it would be judicious or safe to make this a further exception to the general rule, which excludes hearsay evidence. The reasoning of the Su-preme Court of Pennsylvania shows the importance of caution in breaking in upon the general rule. In that reasoning, and the vigilance and strictness which it inculcates, I entirely con-cur, and without the most apparent and urgent necessity, I should not be willing to introduce another exception.

For these reasons, and without going into an examination of all the proof, or dwelling on circumstances, from which strong presumptions arise against the complainant's title to relief, I am of opinion his bill cannot be supported, and shall sign a decree accordingly.

CORNELIUS MCLEAN, for Complainants.
A. RANDALL, for Defendants.

[No appeal was taken in this case.]