LULA W. SUMAN ᴇᴛ ᴀʟ. *vs.* JAMES W. HARVEY ᴇᴛ
   ᴀʟ., EXECUTORS OF ROSE A. HARVEY ᴇᴛ ᴀʟ.

*Devise and Legacy—Parol Evidence of Declarations of Tes-*
   *tator—Gift to Persons Entitled as Heirs at Law and*
         *Next of Kin—Descent and Distribution—*
             *First Cousins Entitled, to Exclusion*
                 *of Child of Deceased First*
                         *Cousin.*

Evidence of the declaration of a testator as to his purpose in
   making his will, or as to what persons would take under it,
   is inadmissible to affect the construction of the will.

When a testator gives his estate to those persons who would
   be entitled thereto under the laws of the State as his next of
   kin and heirs at law, and he leaves surviving him first cous-
   ins and the children of a deceased first cousin, no evidence
   is admissible to show that he intended that a share of his
   estate should go to the children of the deceased first cousin,
   such children not being entitled under the Statute of Distri-
   bution to take as heirs at law or next of kin.

A devise to the heirs of the testator is held to mean those per-
   sons who answer that description at the time of the death of
   the testator.

Under Code, Art. 46, sec. 27, relating to the descent of real
   estate, and Art. 93, sec. 129, relating to the distribution of
   the personal property of decedents, no representation among
   collateral kindred is allowed after brothers' and sisters' chil-
   dren.   And upon the death of a person intestate leaving as
   his nearest relations certain first cousins, and also the chil-
   dren of another first cousin who died before the testator,
   these latter do not take by representation the share of their
   deceased parent, but the whole estate, real and personal,
   passes to the first cousins.

*Decided January 10th, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City (LEHMAYER, J.). The same question was involved in the appeal of Christina Johanna Hettinger against the same appellees from a decree of the same Court made by DOBLER, J.

The causes were argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Thomas Mackenzie, Albert C. Ritchie* and *Frank E. Welsh, Jr.,* (with whom was *Thomas Hughes* on the brief), for L. W. Suman *et al.,* appellants.

*Bernard Carter* and *Jacob M. Moses,* for Christina J. Hettinger, appellant.

*Joseph C. France, Vernon Cook, Charles McH. Howard, Charles A. Marshall* and *George Moore Brady,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

Mrs. Rose A. Harvey, of Baltimore City, died in August, 1909, seized and possessed of a large real and personal estate, which she disposed of by last will and testament as follows:

"After the payment of all my just debts and funeral expenses, I give, grant, devise and bequeath all my property and estate, of whatsoever kind, and wheresoever situate, to my executors hereinafter named, and I direct that all my said property and estate shall be converted into cash as soon as conveniently may be after my decease, without making a sacrifice thereof, and for that purpose I hereby authorize and empower my said executors, and the survivor of them, to sell and dispose of all my personal property and real estate, including ground rents, at public or private sale or sales, for

such price or prices, and upon such terms and conditions as to them may seen best, or to the survivor of them; and to grant and convey the real estate and ground rents to the purchaser or purchasers thereof, his, her or their heirs and assigns, free from all liability for or on account of the application of the purchase money. And I further direct my said executors, and the survivor, from time to time, as to them seems best, as my estate shall be converted into cash, to distribute the proceeds thereof among my heirs at law and next of kin, who may be entitled thereto under the laws of Maryland."

After the will had been admitted to probate in the Orphans' Court of Baltimore City, and letters testamentary had been granted to James W. Harvey and the Safe Deposit and Trust Co. of Baltimore, the executors named therein, Lula W. Suman, assignee of Caroline E. Suman and Sophie J. Day filed a bill in Circuit Court No. 2 of Baltimore City, against the executors and Lewis W. Suman, Amelia Boyd, Henrietta Watts, Barbara C. Gettier, Charles F. Wells and William R. Suman, in which, after stating that Mrs. Harvey died leaving said will and seized and possessed of a large real and personal estate, and that she acquired a part of the real estate by inheritance from her father and brother and the balance by purchase, they allege that the testatrix left as her nearest relatives, "four first cousins, namely: Amelia Boyd, Henrietta Watts, Barbara C. Gettier and Charles F. Wells," and four children of another first cousin, Caroline E. Suman, deceased, namely: Sophie J. Day, one of the plaintiffs, and Caroline E. Suman, assignor of Lula W. Suman, the other plaintiff, and Lewis W. Suman and William R. Suman; that they are "advised and therefore allege" that under the Maryland statutes of descent and distribution, "there is no representation among collaterals beyond the children of brothers and sisters of the deceased but that said statutes have no application to the provisions of

said last will and testament." That by a proper construction of the terms of said will as well as by virtue of the declaration of the said testatrix, "that it was her intention to leave her estate, so that the aforesaid children of the said Caroline E. Suman, the elder, would take the share their mother would have taken if living," the plaintiffs are entitled to share in the distribution of the estate. After suggesting several constructions of the will, the bill then proceeds as follows: "Your oratrices further show that the testatrix fully intended to and supposed she was providing by her will for the children of Caroline E. Suman, the elder, exactly the same interest the said Caroline E. Suman would have taken as an heir at law and distributee of said Rose A. Harvey, had said Caroline E. Suman, the elder, been living at the time of the decease of said Rose A. Harvey, and had the latter died intestate. But your oratrices show that through the agencies of some one or more persons, unknown to your oratrices but intending to secure by the expressions found in said will some benefit to themselves and others to the exclusion of your oratrices, the said Rose A. Harvey was misled into believing that the language in said will did in fact provide for the children of said Caroline E. Suman, the elder, as aforesaid. That your oratrices are unable to aver with any greater certainty the persons or instrumentalities through which the said result was accomplished, as the same is within the peculiar knowledge of the defendants, or someone or more of them and can only be obtained from answers and evidence and a discovery thereof from the defendants. That in consequence of the aforesaid facts, your oratrices are advised and therefore allege that they are entitled to have this Court treat the parties ostensibly entitled under the language of said will as trustees for the children of said Caroline E. Suman, the elder, to the extent of the interest, as aforesaid, that the said Rose A. Harvey, intended to confer upon them by the language of said will and testament," etc.

The prayer of the bill is for a construction of the will; that a trust "may be declared to exist in favor of the said children of Caroline E. Suman, the elder," and that the "defendants may be required to make discovery of all the matters and facts pertaining to the making" of said will, etc. The executors and the four first cousins of the testatrix demurred to the bill, on the grounds: (1) that it does not state such a case as entitles the plaintiffs to any relief against them, and (2) that it does not appear from the bill that the plaintiffs have any such interest in the estate as entitles them to the relief prayed, and the appeal in No. 11 Appeals is from the decree of the Court below, sustaining the demurrers and dismissing the bill.

On the 11th of November, 1909, the executors filed a bill in said Court against the said first cousins of the testatrix, the husband of Mrs. Watts, and any unknown heirs or next of kin of the testatrix, setting out the provisions of the will, giving a statement of the personal and real estate left by the testatrix, showing that she acquired a part of the latter under the will of her father, a part by inheritance from her brothers and that she purchased (bought) the balance, and alleging that to the best of their "knowledge, information and belief the nearest relatives of said testatrix, living at the time of her death, were her four first cousins, the defendants Amelia M. Boyd, widow of James Boyd, deceased, Mary Ann Henrietta Watts, wife of Benjamin Watts, Barbara P. Gettier, widow of John Gettier, deceased, and Charles F. Wells." The plaintiffs further state: "That doubts have been suggested as to the true construction of said will, as to how the beneficiaries among whom the proceeds of said estate is to be divided by your orators shall be ascertained; especially as to whether such distributees shall be ascertained in whole or in part, according to the laws of this State regulating the descent of real estate, or according to the laws regulating the distribution of personal property; the real estate whereof

said testatrix died seized having been all acquired, so far as your orators have been able to ascertain, by purchase or by descent *ex parte paterna,* and not by *descent ex parte materna;* and the law defining the heirs of a decedent for real estate making, as your orators are advised, a distinction with respect to property so acquired in favor of paternal relatives as against maternal relatives in equal degree, which distinction does not obtain in the statutes defining the next of kin for the distribution of personal property." The bill then prays that the Court may assume jurisdiction; that the will may be construed; that the estate may be distributed under its direction, and for an order of publication against any unknown heirs or next of kin of the testatrix," etc. To this bill Lewis W. Suman, a son of Caroline E. Suman, deceased, who was a first cousin of the testatrix, filed an answer and a cross-bill, in which he admits that the nearest relatives of the testatrix, living at the time of her death, were her four first cousins, Mrs. Boyd, Mrs. Watts, Mrs. Gettier and Charles F. Wells, but alleges "that of all the first cousins the" testatrix "was most attached to the said Caroline E. Suman;" that about ten years ago, when the testatrix was supposed to be at the point of death, she stated to Caroline E. Suman that she did not intend to make a will, that "the law disposed of her property in the way in which she wanted it to go, and that Mrs. Suman and her children would get their share;" that some years after Mrs. Suman's death, when the testatrix again stated that she did not intend to make a will, and that Mrs. Suman's children would take the share their mother would have taken, she was told that they would not take anything unless she made a will, and she then declared "she would make a will whereby they would get their mother's share," and that the will in question "was made for the purpose of carrying into effect the intention of the testatrix in this respect." The answer and cross-bill then make the same allega-

tions contained in the bill filed by Lula W. Suman and Sophie J. Day, which we have already set out, and further allege that the testatrix "up until the time of her decease provided for Caroline E. Suman," the daughter of Caroline E. Suman, deceased, who had no means "outside of" the support so provided by the testatrix; that the ties of affection existing between the testatrix "and the said Caroline E. Suman, the elder, were of the strongest character," and that the testatrix "manifested her affection not only in providing for the said Caroline E. Suman, the younger, but also at times assisted" the said Lewis W. Suman, "who was also without any resources, and had a wife and four young children dependent upon him;" that the brother and other sister of the said Lewis W. Suman have only small incomes, and that the testatrix never knew the said Charles F. Wells, who "is a man of great wealth," and resides in Pittsburg, Pennsylvania. The prayer of the cross-bill is the same as the prayer of the bill filed by Lula W. Suman and Sophie J. Day.

The plaintiffs, executors, filed a motion to strike out the appearance entered for Lewis W. Suman, and said answer and cross-bill filed in his behalf, upon the following grounds: (1) Because, " as appears from said answer, the said Lewis W. Suman is not an heir at law or one of the next of kin of the said Rose A. Harvey, nor a beneficiary under her will." (2) "Because no leave of Court for such intervention was given." (3) "Because neither said answer nor the cross-bill filed therewith show that said Lewis W. Suman has any such interest in the subject-matter of this cause as would entitle him to intervene." The Court below granted this motion, and ordered the answer and cross-bill to be stricken from the files, and the appeal in No. 28 Appeals is from that order.

Testimony was taken under the bill filed by the executors, and the Court below decreed that Mrs. Boyd, Mrs. Watts, Mrs. Gettier and Charles F. Wells are the only heirs at law and next of kin of the testatrix, and that they are entitled to

the proceeds of sale of the personal estate, and reserved for further determination the question of their respective rights in the real estate or proceeds of sale thereof. Thereupon, upon a petition filed in the Court below, Christina Johanna Hettinger, the appellant in No. 57 Appeals, and a daughter of another deceased first cousin of the testatrix, was made a party defendant in the case in order that she might enter an appeal from said decree.

The construction of the will, so far as the questions presented by these appeals are concerned, would seem to be free of difficulty. The testatrix directs her executors to convert all her estate, consisting of real and personal property, into cash, and to distribute the proceeds thereof among "my heirs at law and next of kin, who may be entitled thereto under the laws of Maryland." The gift is to those who were, at the time of her death, her heirs at law and next of kin according to the laws of Maryland, and only those answering this description are entitled to share in the distribution of the estate. It is said in 2 *Jarman on Wills,* star page 905: "Like all other legal terms, the word *heir,* when unexplained and uncontrolled by the context, must be interpreted according to its strict technical import; in which sense it obviously designates the person or persons appointed by law to succeed to the real estate in case of intestacy. It is clear, therefore, that where a testator devises real estate simply to his heir, or to his heir-at-law, or his right heirs, the devise will apply to the person or persons answering this description at his death, and who, under the statute regulating the law of inheritance will take the property in the character of devisee, and not, as formerly, by descent." In *Hoover* v. *Smith,* 96 Md. 393, the testator devised and bequeathed all his property, "real, personal and mixed," to his wife for life, or so long as she continued to be "his widow," and directed that after her death or marriage the property should be sold, and the proceeds "divided equally among my lawful heirs." In

that case JUDGE BOYD said: "In 15 *Ency. of Law* (2nd ed.), 322, it is said: 'A devise to heirs, whether to ones own heirs or to the heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take. Where there are no words to control the presumption, the law presumes the intention to be that they take as heirs would take by the rules of descent,' and again it is there said: 'It is well settled that a gift to the heirs of one will be construed as referring to those who are such at the time of the ancestor's death.' If then we adopt the ordinary meaning of the term used by the testator (lawful heirs), we find that he presumably intended that those who would be entitled to his real estate *at the time of his death* should get the benefit of the proceeds of sale. * * * So reading the will thus far, we find the testator left his property to his wife for life, or so long as she remained unmarried, and after her death or marriage to a class of persons whom he designated by the terms which the law says means those upon whom the law casts his real estate immediately upon his death." In *Dove* v. *Tarr,* 128 Mass. 38, cited in support of the text in 15 *Ency. of Law, supra,* the Court says: "A devise to 'heirs,' or 'heirs at law,' is always construed as referring to those who are such at the time of the testator's death unless a different intention is plainly manifested by the will." See also, *Minot* v. *Tappan,* 122 Mass. 536. In 2 *Jarman on Wills,* the author says, on star page 953: "A devise or bequest to *next of kin* creates a joint tenancy in the nearest blood-relations in equal degree of the propositus; such objects being determined without regard to the Statutes of Distribution," and, on star page 954: "But a reference to the statute, whether express, or implied by mention of intestacy, will admit all kin within the statutory limit. And if a testator describes the objects of gift by express reference to the statute, as next of kin under or according to the statute, and does not expressly state how they are to take, they take ac-

cording to the mode and in the shares directed by the statute." The same rule is stated in 16 *Am. and Eng. Ency. of. Law* (1st ed.), 705, where it is further said: "The term 'next of kin' has reference to the death of the ancestor, and those who are entitled to take under that term are to be ascertained at the death of the ancestor." According, therefore, to the natural meaning of the terms employed, the testatrix intended her estate to go to those who, at the time of her death, were, under the Maryland laws of descent and distribution, her heirs at law and next of kin.

There is nothing in the will to indicate that the testatrix intended any other person or class of persons to share in the distribution, and the fact that she was fond of her deceased first cousin, Caroline E. Suman, and the further fact that she manifested affection for some of her children by contributing during her life to their support, are not sufficient to control the clear and unambiguous terms of her will. Nor would the declarations of the testatrix, referred to in the bill filed by Lula W. Suman and Sophie J. Day, and in the answer and cross-bill of Lewis W. Suman, be admissible in evidence to show that she intended the children of Caroline E. Suman, deceased, to take a part of her estate. In the case of *Walston* v. *White,* 5 Md. 297, the testator gave the appellant all his lands "lying 'on the south side of Beaver Dam Branch.'" The Court held that this language was too explicit to allow of doubt as to his intention, and that the only difficulty arose from the fact that the evidence showed that there was a difference of opinion as to the true location of the stream. In answer to the contention of the appellee that this item of the will would be gratified by giving the appellant those portions of "Parson's Outlet which lie southwardly of Beaver Dam Branch, below the forks," CHIEF JUDGE LE GRAND said: "This undoubtedly is so if those portions of Parson's Outlet be *all* the lands which the testator owned which are south of the branch; but if they

are not *all,* then they would not gratify the requirement of the second item of the will. But we have no doubt about the right of the plaintiff to introduce evidence to show the true location of the lands and of the branch. The rule is this: where the language of the testator is plain and unambiguous such language must govern, and, therefore, extrinsic evidence is inadmissible to show that he *meant* something different from what his language imports; but any evidence is admissible, which, in its nature and effect, simply *explains* what the testator *has* written; in other words, the question in expounding wills is not what the testator *meant* as distinguished from what his words express; but simply what is the meaning of his words. And extrinsic evidence, in aid of the exposition of his will, must be admissible, or inadmissible with reference to its bearing upon the issue which this question raises. *Wigram's Rules of Law,* 9. So again, proposition fifth of the same author, which is, that, 'for the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a Court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the Court to *identify* the person or *thing* intended by the testator, or to determine the quantity of interest he has given by his will.' " In the case of *Shreeve* v. *Shreeve,* 43 Md. 382, the Court held that the declarations of the testatrix after she made her will as to its effect, and her intentions in executing it, were clearly inadmissible to affect the construction of the will. In 1 *Redfield on Wills,* page 54, it is said: "The declarations of the testator, whether made before, contemporaneously with, or subsequent to the making of the will cannot be received to affect its construction." In the case of *Shipley* v. *Mercantile Trust Co.,* 102 Md. 649,

the testator gave his wife "dower and thirds" in the residue
of his estate, and the declarations of the testator that he had
made his will, and that his wife would take under his will
one-third of everything he possessed, were offered in evi-
dence.   The Court, applying the rule stated in *Redfield on*
*Wills, supra,* and *Shreeve* v. *Shreeve, supra,* held that the
evidence was not admissible, and JUDGE PEARCE said: "In
adhering to this rule, we have no reference to that class of
cases described in *Walston* v. *White,* 5 Md. 305, in which it
was said extrinsic evidence may be resorted to for the pur-
pose of determining the object of a testator's bounty, or the
subject of disposition, or the physical quantity of interest
intended to be given by the will.

"But it must be remembered that in no case can extrinsic
evidence be resorted to in construing a will, except where
upon reading the words questioned in connection with the
entire will, or upon applying them to the facts in the case,
there arises in the opinion of the Court, an ambiguity or dif-
ficulty of construction, and we cannot perceive that any such
exists here.   The words 'dower and thirds,' in themselves
have each a uniform, established meaning both in law and in
common usage; * * * In *Underhill* and *Strahan on Interpre-*
*tation of Wills,* page 5, it is laid down, 'that a testator who
uses words which have an intelligible, coventional meaning
is not to be held to have used the words with any other mean-
ing, unless the context of the instrument shows that he in-
tended to do so.' "  This statement of rule by JUDGE PEARCE,
is in accord with Vice Chancellor Wigram's second rule of
interpretation of wills, given in note 1, on page 334 of 1
*Greenleaf on Ev.* (13th ed.), which is as follows: "II. Where
there is nothing in the context of a will, from which it is
apparent that a testator has used the words, in which he has
expressed himself, in any other than their strict and primary
sense, and where his words so interpreted are sensible with
reference to extrinsic circumstances, it is an inflexible rule

of construction, that the words of the will shall be interpreted in their strict and primary sense, and in no other, although they may be capable of some popular or secondary interpretation, and although the most conclusive evidence of intention to use them in such popular or secondary sense be tendered." In the case of *Tucker and others, Executors,* v. *Seaman's Aid Society and others,* 7 Met. 188, "A testator (quoting from the syllabus) gave a legacy to 'the Seaman's Aid Society in the City of Boston;' another society, denominated 'The Seaman's Friend Society,' claimed the legacy, and offered evidence to prove that the testator had no knowledge of the existence of the society named in his will; that he knew of the existence of said other society, was deeply interested in its objects, had contributed to its funds, and had frequently expressed a determination to give it a legacy; that he directed the scrivener, who wrote his will, to insert the legacy as made to said society; that the scrivener not knowing the existence of said society, told the testator that the name of the society was the Seaman's Aid Society; and that the testator thereupon submitted to have that name inserted." The Court held that this evidence was not admissible, and that the Seaman's Aid Society was entitled to the legacy. SHAW, C. J., at the conclusion of a lengthy opinion, said: "The present is not a case of latent ambiguity, for the reasons clearly stated. On the face of the will it is plain and clear. When the will comes to be applied, there are found to be two societies: one rightly named and described, the other not. There is then no ambiguity as to the society intended by the will. It is the offer of proof of intent *aliunde* which creates the doubt, and this is clearly inadmissible, under the rule applicable to such cases." As we have said, in the case at bar the terms of the will are plain. The testatrix clearly designated the objects of her bounty, and there are those who answer the description. There can be no difficulty, therefore, in applying the terms of the will to the

facts in the case. Evidence to show who, at the time of her death, were her heirs at law and next of kin, under the laws of Maryland, and, in that sense, to *identify* the persons named in the will, is, of course, admissible, but extrinsic evidence cannot, under the authorities cited, be resorted to for the purpose of showing that the testatrix intended persons other than those named in her will to share in the distribution of her estate.

The appellants rely upon the allegations of the bill filed by Lula W. Suman and Sophie J. Day, and the answer and cross-bill of Lewis W. Suman, "that the testatrix fully intended and supposed she was providing by her will for the children of Caroline E. Suman," deceased, and that she was, by someone unknown to the appellants, "misled into believing that the language in said will did in fact" make such provision, as sufficient to establish a trust in favor of the children of said Caroline E. Suman. It is said in 2 *Pomeroy's Eq.*, sec. 1054 (2nd ed.): "Whenever a person procures a devise or bequest to be made directly to himself,— and thereby preventing perhaps an intended testamentary gift to another,—through false and fraudulent representations, assurances or promises that he will carry out the original and true purpose of the testator, and will apply the devise or bequest to the benefit of the third person who is the real object, and who would otherwise have been the natural recipient of the testator's bounty, and after the testator's death he refuses to comply with his former assurances or promises, but claims to hold the property in his own right and for his own exclusive benefit,—in such case equity will enforce the obligation by impressing a trust upon the property in favor of the one who has been defrauded of the testator's intended gift, and by treating the actual devisee or legatee as a trustee holding the mere legal title, and by compelling him to carry the trust into effect," etc. In the case of *Gaither* v. *Gaither,* 3 Md. Ch. 158, CHANCELLOR JOHN-

son stated the principles as follows: "The proposition of law upon which the complainant's case rests, and upon which he has placed it by his bill, appears to be well fortified by authority. That proposition is, that if an heir or personal representative or devisee whose interests would be prejudiced by the insertion of a provision in a will in favor of some third person, induces the testator to omit such provision by assurances that his wishes shall be executed, as though the provision were made, such assurances will raise a trust which, though not available at law, will be enforced in equity on the ground of fraud." And in disposing of the case he said: "Upon attentively reading and considering the testimony adduced by the plaintiff, and putting out of view altogether the proof on the other side, I can see no ground upon which I could decree the relief prayed by this bill .in opposition to these answers. The principle, it will be remembered, is, that the heir or devisee must have induced the testator or intestate to omit the particular provision by assurances that his wishes should be as fully executed as if the omitted provision was made, and even though it be conceded that such an engagement may be entered into not only by words but by silent assent, as in a case somewhat analogous was held by LORD LOUGHBOROUGH, in 4 *Ves.* 10, and was considered by LORD ELDON, sufficient to raise a trust in *Paine* v. *Hall*, 18 Ves. .475, still this bill cannot be maintained, because, as I read the evidence, there is no proof of any assurance by Beale Gaither, either by express or silent assent, that if the testator would not make the provision set up by the bill, he would, nevertheless, execute his intentions as though he had made it." In the case of *Needles* v. *Martin*, 33 Md. 609, *Gaither* v. *Gaither, supra,* is cited by the Court in support of the statement: "In this case the property was bequeathed by the testator and accepted by the legatees, upon the express understanding and agreement between them, that it should be applied in the manner and to the object prescribed in the letter of instructions, and, under such cir-

cumstances, a Court of Equity will interpose to prevent them from appropriating the property to themselves, and to compel the execution of the trust, if the trust can be legally sustained." In the case of *Clark* v. *Callahan,* 105 Md. 600, the father of the appellee had a benefit certificate made payable to her upon the understanding with her that she would pay one-half of the proceeds to the appellant, and JUDGE PEARCE said: "By assenting to her father's wishes and directions she led him to make no other disposition in favor of the plaintiff, and fastened upon her conscience a trust or confidence which she cannot repudiate without fraud, and which a Court of Equity will enforce." In *Coyne* v. *Supreme Conclave,* 106 Md. 54, JUDGE BURKE says: "There is also a class of trusts which arise *ex maleficio,* and equity in order to reach the possessor of what in conscience belongs to another, turns him into a trustee. 'Thus, if a man in confidence of the parol promise of another to perform an intended act, should omit to make certain provisions, gifts or arrangements, by will, or otherwise, such a promise would be specifically enforced in equity, etc." And in the case of *Whitehouse* v. *Bolster* (95 Maine), 50 At. Rep. 240, the Court said: "There is one principle that runs through all the cases, and which, in our view of this case, must be decisive here. It must always appear that the decedent relied upon the promise of the heir or devisee as an effective arrangement for the future disposition of his property. This principle is fundamental and universal." See also *Colegate D. Owing's Case,* 1 Bland, page 402, and note to *Crossman* v. *Keiser.* 8 L. R. A. (N. S.) 698. It would seem clear, without further citation of authority, that the allegations of the bill, answer and cross-bill, do not bring the cases within the principle upon which the appellants rely. It is not alleged that the testatrix gave her property to her heirs at law and next of kin relying upon their promise, or the promise of anyone of them, either express or implied, to give any part of it to the children of Caroline E. Suman, deceased. On the con-

trary, the distinct allegations are that the testatrix supposed the appellants would take under the provisions of the will. In order to establish such a trust, it must appear that the devisee or legatee took under the will property which he would not have received but for his promise, express or implied, to take it for a third person. In such cases equity enforces the obligation in order to prevent the consummation of a fraud.

The remaining question is, are the appellants within the class designated by the testatrix to take her property? The evidence shows and it is conceded, that Mrs. Boyd, Mrs. Watts, Mrs. Gettier and Charles F. Wells are first cousins of the testatrix, and that the appellants are children of first cousins who died before the testatrix, and the precise question is, do such children share in the distribution as heirs at law or next of kin under the Maryland statutes of descent and distribution? Under Article 46 of the Code, where the real estate descended to the intestate on the part of the father, and there are no children or descendants; no father, brothers or sisters of the blood of the father, or descendants of such brothers or sisters, such estate goes to the grandfather on the part of the father, and section 6 provides: "If no such grandfather living, then to the descendants of such grandfather and their descendants, in equal degree, equally." Where the real estate descended to the intestate on the part of the mother, and there are no children or descendants; no mother, no brothers or sisters of the blood of the mother, or descendants of such brothers or sisters, such estate goes to the grandfather on the part of the mother, and if no such grandfather be living, then by section 14, it goes to the descendants of such grandfather, "in equal degree, equally." Where the estate is vested in the intestate by purchase, etc., and there are no children or descendants; no brothers or sisters of the whole blood, or descendants of such brothers or sisters; no brothers or sisters of the half blood, or descendants of such brothers or sisters, section 21 directs that it shall go

to the father, and if no father living, then to the mother, and
if no mother living, then to the grandfather on the part of
the father, and if no such grandfather living, then to the de-
scendants of such grandfather in equal degree, equally."
Section 27, provides: "If in the descending or collateral line,
any father or mother shall be dead, the child or children of
such father or mother shall by representation be considered
in the same degree as the father or mother would have been
if living, and shall have the same share of the estate as the
father or mother, if living, would have been entitled to, and
no more; and in such case, where there are more children
than one, the share aforesaid shall be equally divided among
such children; provided, that there be no representation ad-
mitted among collaterals after brother's and sister's chil-
dren." Article 93 of the Code, after providing the order in
which the personal estate of an intestate shall go to the chil-
dren, descendants, father, brothers or sisters, descendants of
brothers or sisters, and mother, by section 129 provides:
"After children, descendants, father, mother, brothers and
sisters of the deceased, and their descendants, all collateral
relations in equal degree shall take, and no representation
amongst such collaterals shall be allowed; and there shall be
no distinction between the whole and half blood."

Since the cases of *Porter* v. *Askew,* 11 G. and J. 346, and
*McComas* v. *Amos,* 29 Md. 120, and the full discussion and
review of those cases in *Hoffman* v. *Watson,* 109 Md. 532,
there can be no doubt as to the proper construction of section
27 of Article 46, and section 129 of Article 93, in regard to
representation among collaterals. In *Porter* v. *Askew* the
Court held that the proviso in the fourth section of the Act
of 1820, Ch. 191 (now section 27 of Article 46 of the Code),
limited representation among collaterals to the children of
brothers and sisters of the intestate, and that the aunt of
the intestate was entitled to the whole estate, to the exclusion
of children of deceased uncles and aunts of the intestate. In
*McComas* v. *Amos,* the Court said that under section 131

(now section 129) of Article 93 of the Code, no representation is admitted among callaterals after brother's and sister's children, and that grandnephews and grandnieces are not entitled to share in the distribution of the estate "when there are those (nephews and nieces) of a nearer degree of relationship to the intestate." As the children of first cousins of the testatrix are more remotely related to her than her first cousins, and as such children cannot take by representation, it follows that if Mrs. Harvey had died intestate, they would not have been entitled to any part of her real or personal estate, and do not, therefore, come within the class described by the testatrix as, "my heirs at law and next of kin, who may be entitled thereto under the laws of Maryland." This we understand to be conceded by some of the appellants, but it is ingeniously argued on behalf of one of the appellants that Mrs. Watts, Mrs. Gettier and Charles F. Wells "do not take as first cousins of Mrs. Harvey, but as descendants of the common ancestor, *i. e.,* Mrs. Harvey's paternal grandfather;" that they are not in the collateral line but in the descending line; that the proviso in section 27 does not apply to them, and that if said first cousins take as descendants of the paternal grandfather the appellant will also take in the same capacity. If this contention is sound then the decision in *Porter* v. *Askew, supra,* so recently approved by this Court in *Hoffman* v. *Watson, supra,* was radically wrong, for, as we have said, the Court in that case treated the aunt and first cousins of the intestate as collateral relations, and held that the proviso in section 27 applied. It is said in 2 *Blackstone,* 202: "Consanguinity, or kindred, is defined by writers on these subjects to be *'vinculum personarum ab eodem stipite descendentiem';* the connection or relation of persons descended from the same stock or common ancestor. This consanguinity is either lineal or collateral. Lineal consanguinty is that which subsists between persons, of whom one is descended in a direct line from the other." * * * (page 203.) "Collateral kindred answers the

same description: collateral relations agreeing with the lineal in this, that they descend from the same stock or ancestor; but differing in this, that they do not descend one from the other." In 1 *Bouvier,* 186, Collateral kinsmen are said to be "those who descend from one and the same common ancestor, but not from one another; thus brother and sisters are collateral to each other; the uncle and the nephew are collateral kinsmen, and cousins are the same." The term "Collaterals" in the sections of the Code referred to, means the collateral relations of the intestate, and the fatal error in this contention is that it overlooks the fact that the appellant, in order to bring herself within the provision of the will, is seeking to establish her right to inherit *from her mother's first cousin,* and not *from her mother's grandfather.*

It follows from what has been said, that the appellants have no interest in the estate of the testatrix, and that the decree of the Court below sustaining the demurrers and dismissing the bill must be affirmed.

> *Decree affirmed, the costs in this Court to be paid by the Executors out of the estate.*